605 So.2d 922 (1992)
Michael Earl DOBBINS, Appellant,
v.
STATE of Florida, Appellee.
No. 91-1953.
District Court of Appeal of Florida, Fifth District.
September 24, 1992.
Jeffrey L. Dees, Ormond Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Judy Taylor Rush, Asst. Atty. Gen., Daytona Beach, Michael Neimand, Miami, and Richard Doran, Tallahassee, for appellee.
Kenneth W. Shapiro of Berger & Shapiro, P.A., Ft. Lauderdale, for Amicus Curiae, Anti-Defamation League of B'Nai B'rith.
*923 HARRIS, Judge.
John Daly, a Jewish youth, in protest to his parents and denial of his religion, joined the "Skinheads", an association openly and vociferously anti-Semitic. Ultimately, when his fellow members learned of his Jewish background, some of them decided to take action.
He was beaten by several members of the association, including Michael Earl Dobbins, appellant herein. During the beating, Dobbins and others made such statements as "Jew boy," and "Die Jew boy."
Dobbins was tried and convicted under the battery statute (Fla. Stat. 784.03(1)(a)) and sentenced under the enhancement provisions of the hate crime statute (Fla. Stat. 775.085).
We find the evidence sufficient to uphold the jury's verdict that Dobbins committed the proscribed act and that the commission of the act evidenced prejudice based on Daly's "ancestry, ethnicity, religion or national origin".
The sole issue that we find merits discussion is the constitutionality of section 775.085, Florida Statutes (1989). We find it to be constitutional.

VAGUE AND OVERBROAD
Appellant first contends that the statute is vague and overbroad. He contends the statute is susceptible of applying to protected speech because it does not require that the prejudice alleged have any specific relationship to the commission of the crime.
This argument seems to concede that if the statute permits enhancement only upon proof, beyond a reasonable doubt, that appellant committed the battery motivated, in whole or in part, because Daly was Jewish, the enhanced penalty would be appropriate.
That is precisely the way we read the statute. Section 775.085 provides:
The penalty for any felony or misdemeanor shall be reclassified as provided in this subsection if the commission of such felony or misdemeanor evidences prejudice based on the race, color, ancestry, ethnicity, religion or national origin of the victim.

Appellant urges that the language can be read to apply to a situation in which the defendant commits a race, color or religious neutral crime (for example, resisting arrest because he thinks he's innocent), but during the commission of the offense makes a racial slur. We do not agree. The statute requires that it is the commission of the crime that must evidence the prejudice; the fact that racial prejudice may be exhibited during the commission of the crime is itself insufficient.
In the present case the jury was required to find that the beating, based on the background and relationship between the participants and the statements made during the beating, evidenced that Daly was the chosen victim because he was Jewish. Had the fight occurred for some other reason (over a woman, because of an unpaid debt, etc.), the mere fact that Daly might have been called a "Jew boy" could not enhance the offense.

PUNISHMENT OF OPINION
The more troubling argument made by Dobbins is that the enhancement provision punishes opinion. We find the statute involved in this case sufficiently different from the St. Paul ordinance so that R.A.V. v. City of St. Paul, ___ U.S. ___, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), is not dispositive.[1]
First, R.A.V. dealt with an ordinance that expressly made criminal the placing "on public or private property a symbol ... which one knows ... arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender ..." This clearly makes criminal the public expression of an intolerant opinion. We agree that the First Amendment prohibits intrusion into the rights of one to *924 freely hold and express unpopular, even intolerant, opinions.
But section 775.085 does not punish intolerant opinions. Nor does it punish the oral or written expression of those opinions. It is only when one acts on such opinion to the injury of another that the statute permits enhancement.
John Stuart Mill in his On Liberty[2] points out this distinction:
Such being the reasons which make it imperative that human beings should be free to form opinions, and to express their opinions without reserve; and such the baneful consequences to the intellectual, and through that to the moral nature of man, unless this liberty is either conceded, or asserted in spite of prohibition; let us next examine whether the same reasons do not require that men should be free to act upon their opinions  to carry these out in their lives, without hinderance, either physical or moral, from their fellow men, so long as it is at their own risk and peril.
This last provision is of course indispensable. No one pretends that actions should be as free as opinions. On the contrary, even opinions lose their immunity when the circumstances in which they are expressed are such as to constitute their expression a positive instigation to some mischievous act. An opinion that corn dealers are starvers of the poor .. . ought to be unmolested when simply circulated through the press, but may justly incur punishment when delivered orally to an excited mob assembled before the house of a corn-dealer ... Acts, of whatever kind, which, without justifiable cause, do harm to others, may be, and in the more important cases absolutely require to be, controlled by the unfavorable sentiments, and, when needful, by the active interference of mankind.
We believe that the act of choosing a victim for a crime because of his race or religion is a type of speech that is subject to regulation.
We recognize that other courts have reached a different result under similar facts and similar law.
The Court in State v. Mitchell, 169 Wis.2d 153, 485 N.W.2d 807, 812 (1992) stated:[3]
Without doubt the hate crime statute punishes bigoted thought. The state asserts that the statute punishes only the "conduct" of intentional selection of a victim. We disagree. Selection of a victim is an element of the underlying offense, part of the defendant's "intent" in committing the crime. In any assault upon an individual there is a selection of the victim. The statute punishes the "because of" aspect of defendant's selection, the reason the defendant selected the victim, the motive behind the selection.
We concede, as we must, that the defendant's motive is implicated in this issue. But that does not mean that the prohibited conduct is not subject to regulation.[4] As the Supreme Court stated in R.A.V.:
From 1791 to the present, however, our society, like other free but civilized societies, has permitted restrictions upon the content of speech in a few limited areas, which are "of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."
* * * * * *
We have long held, for example, that nonverbal expressive activity can be *925 banned because of the action it entails, but not because of the ideas it expresses.
R.A.V., 112 S.Ct. at 2542-4.
The purpose of section 775.085 is to discourage through greater penalties the discrimination against someone (by making such person the victim of a crime) because of race, color, or religion. How does this differ from any discrimination prohibition? The refusal to hire a woman cannot be justified under 42 U.S.C. section 2000e-2, 29 C.F.R. section 1604.11 (1991) because it is the expression of the employer's opinion that women should not be in the work place. The rejection of Blacks from a jury is not exempted from the consequences of Powers v. Ohio[5] and State v. Neil[6] because it is an expression of the attorney's or client's opinion that Blacks are incompetent.
In such cases it is not the content of the speech that is prohibited, but such act of discrimination. It does not matter why a woman is treated differently than a man, a black differently than a white, a Catholic differently than a Jew; it matters only that they are.
So also with section 775.085. It doesn't matter that Dobbins hated Jewish people or why he hated them; it only mattered that he discriminated against Daly by beating him because he was Jewish. This, we think, meets the Supreme Court test in R.A.V.:
Thus, for example, sexually derogatory "fighting words," among other words, may produce a violation of Title VII's general prohibition against sexual discrimination in employment practices [citation omitted]. Where the government does not target conduct on the basis of its expressive content, acts are not shielded from regulation merely because they express a discriminatory idea or philosophy.
R.A.V., ___ U.S. at ___, 112 S.Ct. at 2546-7.
The Supreme Court in R.A.V. made it clear that they were not addressing victim specific discrimination when it said:
What we have here, it must be emphasized, is not a prohibition of fighting words that are directed at certain persons or groups (which would be facially valid if it met the requirements of the Equal Protection Clause) ...
Id., ___ U.S. at ___, 112 S.Ct. at 2548.
In our case there is no equal protection challenge to section 775.085 which does prohibit "fighting words" directed at certain groups.
There is yet another reason we find the statute constitutional. Even if the statute is considered to regulate the content of speech, it is nonetheless justified because it is narrowly tailored to serve the compelling state interest of ensuring the basic human rights (not to be a target of a criminal act) of members of groups that have historically been subjected to discrimination because of membership in those groups.
The Supreme Court in R.A.V. recognized this as a proper reason for regulating content and stated:
The dispositive question in this case, therefore, is whether content discrimination is reasonably necessary to achieve St. Paul's compelling interest.
Id., ___ U.S. at ___, 112 S.Ct. at 2550.
In R.A.V., the Supreme Court held that it was not. But again in R.A.V. the Court was dealing with an ordinance that regulated specific speech content that St. Paul considered to violate the rights "of such group members to live in peace where they wish." The Court held that the same beneficial effect sought by St. Paul could have been obtained with a less intrusive ordinance that did not target the specific content prohibited by the ordinance. For example, the ordinance could provide that it was a violation to molest Jewish people because of their religion. This would not regulate the content of speech but rather the act of religious molestation. In our case, it is the act of discrimination against *926 people because of their race, color or religion by making them victims of crime that is prohibited and punished, not the specific opinion that leads to that discrimination. We think that appropriate.
AFFIRMED.
GOSHORN, C.J., and DAUKSCH, J., concur.
NOTES
[1] We notice also that in R.A.V. the defendant did not appeal, and the Supreme Court did not consider, his conviction of a racially motivated assault. It is this issue, in essence, that is before us.
[2] John Stuart Mill, On Liberty 119 (Penguin Books Ltd., 1974) (1st ed. 1859)
[3] See also State v. Wyant, 64 Ohio St.3d 566, 597 N.E.2d 450 (1992).
[4] For example, the Supreme Court in Barclay v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), held that a sentencing judge in a capital case might properly take into consideration "the elements of racial hatred" in Barclay's crime as well as "Barclay's desire to start a race war." If a court may properly consider such racial hatred in determining whether to impose a harsher sentence, may not the legislature mandate that the judge do so? Is it proper for the court but not the legislature?
[5] ___ U.S. ___, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).
[6] 457 So.2d 481 (Fla. 1984).