608 So.2d 917 (1992)
Bryan K. RICHARDS, Appellant,
v.
The STATE of Florida, Appellee.
No. 90-2912.
District Court of Appeal of Florida, Third District.
November 17, 1992.
Randolph Q. Ferguson, Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Neimand and Fariba N. Komeily, Asst. Atty. Gen., for appellee.
Berger & Shapiro and Kenneth W. Shapiro, Ft. Lauderdale, for Anti-Defamation League of B'Nai B'Rith, as amicus curiae.
Before HUBBART, COPE and GODERICH, JJ.
HUBBART, Judge.
This is an appeal by the defendant Bryan K. Richards from final judgments of conviction and sentences for aggravated battery, as a reclassified first-degree felony, and simple battery, as a reclassified third-degree felony. The defendant contends that it was improper to reclassify these offenses under Section 775.085(1), Florida Statutes (1991), because, he asserts, this statute is unconstitutionally void for vagueness. He concedes, however, that he was properly convicted for aggravated battery, as a second-degree felony, and simple battery, as a first-degree misdemeanor.
The central issue which is, therefore, presented by this appeal is whether section 775.085(1), Florida Statutes (1991), which reclassifies and enhances the criminal penalties for any felony or misdemeanor if the commission of such felony or misdemeanor "evidences prejudice based on the race, color, ancestry, ethnicity, religion, sexual orientation, or national origin of the victim," is unconstitutional as being void for vagueness. For the reasons which follow, we conclude that the statute is unconstitutionally void for vagueness, and, accordingly, reverse and remand with directions to enter judgments of conviction and sentences against the defendant for aggravated battery, as a second-degree felony, and simple battery, as a first-degree misdemeanor. This decision necessarily allows the state to appeal our determination on this issue to the Florida Supreme Court, should it elect to do so. Art. V, § 3(b)(1), Fla. Const.

I
The defendant Bryan K. Richards was charged in a two-count information below with (1) an aggravated battery upon Vivian *918 Pringle [§ 784.045(1)(a)(1), Fla. Stat. (1991)], and (2) a simple battery on Marcel Bruff [§ 784.03, Fla. Stat. (1991)]; both counts further charged that in committing the above offenses, the defendant "evinced prejudice based upon the race, color[,] ancestry, ethnicity, religion[,] or national original of the victim in violation of [§] 775.085 [Fla. Stat. (1991)]." (R.5-6). The defendant made a pretrial motion to strike the above-quoted allegations from the information or to limit its interpretation on the ground that section 775.085, Florida Statutes (1991), upon which such allegations rested, was unconstitutionally "vague and overly broad" in that the statute "contains no standards or definition of evidencing prejudice in the commission of a misdemeanor or felony." (R.20). The trial judge denied the motion (TR.110) and concluded that she would not, as requested, instruct the jury that prejudicial intent was an essential element of the punishment enhancement charged therein, (TR.115), nor would she allow either counsel to argue to the jury the issue of such intent or lack of intent with respect thereto. (TR.116).
At trial, the state introduced evidence from the two complainants which tended to show that Marcel Bruff, accompanied by his cousin Vivian Pringle and Pringle's two-year-old son, drove their car to an apartment complex in Miami to visit a friend named Cheryl Henry and parked in a marked parking place in the rear of the complex. Pringle got out of the vehicle and proceeded to wait for Henry while leaning on another car which was parked in front of Henry's apartment door; Bruff and the young boy remained in the car. At that point, the defendant Bryan K. Richards, with a beer in his right hand, approached Pringle, stood within six inches of the latter's face, and asked Pringle what he was doing there. Pringle apologized for leaning on the car, which he mistakenly assumed belonged to the defendant, got up from the car, and responded that he was there visiting a friend. The defendant is white; Pringle and Bruff are black.
The defendant then stated, "I am tired of you f____ niggers being down here. Got a job? Boat people... . You niggers  niggers down here playing music and keeping me up. And get a job." (TR.151). Pringle was shocked at this outburst as he did not know the defendant and asked what was going on. The defendant continued the verbal abuse, "Why don't you get a f____ job," and thereupon pushed Pringle to the ground (TR.165-66). At that point, Bruff and Pringle's young son got out of the car to see what was going on. The defendant then pushed Bruff, and Bruff pushed the defendant back. By that time, Pringle had gotten to his feet and the defendant then punched Pringle in the face, knocking him down and rendering him semi-unconscious. Bruff and the defendant then engaged in a mutual fist fight, during which the defendant bear-hugged Bruff, slammed Bruff to the ground, and punched Bruff in the eye and neck.
The police were summoned; two Metro-Dade police officers were dispatched to the scene and spoke to the participants in the fight. According to the officers who testified below, the defendant told them that he "was tired of blacks being in the parking lot, selling drugs and playing loud music" where he lived (TR.136); the officers, however, were unable to locate a radio or any evidence of drugs in the area. The defendant further stated that the fight "was no big deal, that it was over[,] and he [didn't] see anything wrong with a redneck beating up a couple of blacks," (TR.146), a statement which he repeated two or three times. (TR.138). When the defendant was arrested, he further told the second police officer that the only reason he was being arrested was because the officer was black. (TR. 147).
As a result of the defendant's punches in the fight, Pringle's jaw was fractured in three places and three of Pringle's teeth were knocked out. Pringle underwent two surgical operations on his knee which was twisted in the fight; also, his jaw had to be wired. Bruff suffered a swollen eye and sore neck as a result of the defendant's blows. The defendant himself was taken to Jackson Memorial Hospital and treated for scratches around his neck.
*919 The defendant testified at trial and gave a significantly different account of the subject altercation than did Pringle and Bruff. According to the defendant, he was returning home by car from a banquet on the night in question when he encountered a parked car in the parking lot of his apartment complex; the parked car was blocking the parking spot where he usually parked. The defendant accordingly parked elsewhere and thereafter approached the man he later learned was Pringle who was sitting on a parked car, and asked why he was blocking the defendant's parking spot. Pringle came down off the car and said, "It's none of your f____ business what I'm sitting here for," (TR.217), and walked up to the defendant, telling him to mind his own business. The defendant replied that it was his business, that "[t]here's always people hanging in the parking lot drinking beer and playing music. You're liable to do the same thing. I can't get any sleep when you people do that stuff." (TR.217-18).
The defendant then pushed away Pringle, who by that time was in his face. Pringle then pushed back and a fist fight ensued, during which time the defendant was grabbed from behind by a second man whom he later learned was Bruff. The defendant was struck several times by Pringle, once in the back of the skull; the defendant, in turn, struck Pringle as well as Bruff, who was wrestling with the defendant throughout the altercation. Finally, the defendant landed a hard punch to Pringle's jaw, knocking Pringle down, and thereafter a tenant in the apartment complex broke up the fight. The defendant testified that he didn't recall calling Pringle or Bruff any racial names, although he did in the heat of the argument say, "Why don't you get a job." (TR.222). The defendant further testified that he told the police officers who arrived on the scene that the other two men tried to beat him up, and that he didn't see anything wrong in what he did, that he just got the best of the fight; he told the officers he could be a bit of a "redneck," but denied saying that he had beat up the two men because they were black.
Conrad Meah, the tenant who broke up the fight, was also called as a witness by the defendant. He observed the initial pushing and shoving between the defendant and Pringle as Meah emerged from his apartment, but was unable to hear any of the words exchanged between the two men. Meah then saw a third man join the fight and also saw Pringle's young son. Meah rushed over to break up the fight saying, "Look what you're doing to the kid. This kid is scared to death over here." (TR.205). Meah saw the defendant strike Pringle in the jaw during the fight, but heard no racial epithets from anyone.
At the close of all the evidence and after closing argument of counsel, the trial court instructed the jury, over objection (TR.194-95), concerning the elements for enhanced punishment under section 775.085, Florida Statutes (1991):
"The punishment provided by law for the crimes of aggravated battery and battery is greater if the aggravated battery and battery were committed under certain circumstances.
Therefore, if you find the Defendant guilty of aggravated battery and battery, you must then consider whether the State has further proved that the commission of the aggravated battery and battery evidenced prejudice based on race, color, ancestry, ethnicity, religion or national origin of the victim.

If you find that the Defendant committed the aggravated battery and battery without any aggravating circumstances, you should find him guilty of aggravated battery and battery."
(TR.12, October 12, 1990) (emphasis added).
The verdict forms, which were given to the jury, contained one of two boxes to be filled in if the jury found the defendant guilty as to either the charge of aggravated battery or simple battery. The following appeared after the first box: "evidencing prejudice based on the race, color, ancestry, ethnicity, religion, or national origin of the victim"; the following appeared after the second box: "without evidencing prejudice based on the race, color, ancestry, *920 ethnicity, religion or national original of the victim." (R.64-65)
After retiring to consider its verdict, the jury sent back a written question to the trial judge:
"The jury instructions do not define what evidencing means? If you would, give us a definition of what evidencing [is]?"
(R.63, October 12, 1990) (emphasis supplied). The trial judge held a conference with counsel prior to answering this question and concluded that she did not want to define the word "evidencing" for the jury because "the [s]tatute does not have any definition for the word... ." (TR.39, October 12, 1990). Without objection, the trial judge thereupon brought the jury back to the courtroom and instructed them that they had "all the law applicable to this case," and that "[t]here's no further law I can provide you with." (TR.42, October 12, 1990).
The jury retired and subsequently convicted the defendant as charged on both counts of the information; the jury also checked the boxes indicating that the defendant had "evidenc[ed] prejudice" based on the race [etc.] of the victim. The trial court adjudged the defendant guilty based on the jury verdict and sentenced him to four years in the state prison, followed by two-years probation. The defendant appeals.

II
The central point on appeal raised by the defendant is that the trial court erred in denying his motion to strike the enhancement allegations of both counts of the information; it is urged that section 775.085(1), Florida Statutes (1991), upon which the enhancement allegations were based, is unconstitutionally void for vagueness. Accordingly, the defendant contends that his convictions should be reduced to aggravated battery, as a second-degree felony, and simple battery, as a first-degree misdemeanor. We agree.

A
Section 775.085(1), Florida Statutes (1991) provides:
"(1) The penalty for any felony or misdemeanor shall be reclassified as provided in this subsection if the commission of such felony or misdemeanor evidences prejudice based on the race, color, ancestry, ethnicity, religion, sexual orientation, or national origin of the victim:

(a) A misdemeanor of the second degree shall be punishable as if it were a misdemeanor of the first degree.
(b) A misdemeanor of the first degree shall be punishable as if it were a felony of the third degree.
(c) A felony of the third degree shall be punishable as if it were a felony of the second degree.
(d) A felony of the second degree shall be punishable as if it were a felony of the first degree." (emphasis supplied).
In a long and unbroken line of decisions, the Florida Supreme Court has repeatedly held that
"[w]hether the words of [a penal] statute are sufficiently explicit to inform those who are subject to its provisions what conduct on their part will render them liable to its penalties is the test by which [such a] statute must [constitutionally] stand or fall, because ... `[a] [penal] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.'"[1]
*921 Stated differently, "[a]n assault on the constitutionality of a [penal] statute vel non must necessarily succeed if the language does not convey sufficiently definite warnings of the proscribed conduct when measured by common understanding and practice";[2] on the other hand, "[a] [penal] statute will withstand constitutional scrutiny under a void-for-vagueness challenge if it is specific enough to give persons of common intelligence and understanding adequate warning of the proscribed conduct."[3] Finally, "[w]hen construing a penal statute against an attack of vagueness, where there is doubt, the doubt should be resolved in favor of the citizen and against the state," as "[c]riminal statutes are to be strictly construed according to the letter thereof."[4]

B
Measured by these standards, we conclude that section 775.085(1), Florida Statutes (1991), is unconstitutionally void for vagueness because, simply stated, it does not define with sufficient due process particularity what additional criminal act is required in order to reclassify and thus enhance the punishment of a felony or misdemeanor. The statute provides that the penalty for any felony or misdemeanor shall be reclassified so as to enhance the punishment for said offense "if the commission of such felony or misdemeanor evidences prejudice based on the race, color, ancestry, ethnicity, religion, sexual orientation, or national origin of the victim." § 775.085(1), Fla. Stat. (1991). Beyond the commission of the underlying felony or misdemeanor itself, the statute requires, as an additional act, that the manner in which such felony or misdemeanor is committed must "evidence[]" a particular type of "prejudice" toward the victim of the crime. It is not clear, however, whether the statutory element of "evidence[]" need only be a mere suggestion or something of more substantial import; and, if the latter, it is equally unclear what the exact nature of that import might be. Moreover, the statutory element of "prejudice" against the victim covers a wide variety of mental states, ranging from a mild bias to a virulent hatred, which presumably must be entertained by the perpetrator; on the other hand, because the very act of committing the underlying felony or misdemeanor must itself demonstrate in some way this condemned "prejudice," it is not clear whether a conscious "prejudice" is even required apart from the proscribed act itself, whatever that might be. It is therefore utterly ambiguous and totally confusing as to what specific act the statute requires a person to commit in order to reclassify and enhance the punishment of a felony or misdemeanor; people of common intelligence must necessarily guess as to its meaning and differ as to its application. This being so, the statute is a classical example of an unconstitutionally vague penal statute. See supra cases collected at note 1.
The Fifth District Court of Appeal has recently upheld the statute primarily against a First Amendment attack, but also against a vagueness challenge made in a First Amendment context. Dobbins v. State, 605 So.2d 922 (Fla. 5th DCA 1992). In so doing, however, the court interpreted the statute to "permit[] enhancement only upon proof, beyond a reasonable doubt, that [the perpetrator] committed [the charged crime] motivated, in whole or in part, because [the victim] was [of a particular race, color, ancestry, ethnicity, religion, sexual orientation or national origin]"  which would therefore seem to require proof of a special prejudicial motive or intent on the part of the perpetrator. Arguably, of course, this is one of several meanings which might conceivably be gleaned from this otherwise ambiguous statute, as *922 the statutory term "prejudice" would appear to refer to a particular mental state. Unfortunately, the open-ended nature of the statute does not exclude other contrary meanings, and, therefore, this interpretation is not a fair or reasonable construction of the statute, but an impermissible rewrite thereof. State v. Elder, 382 So.2d 687, 690 (Fla. 1980). Indeed, the statute contains no express terms of motive or special criminal intent at all and requires only that the "commission" of the underlying felony must itself "evidence[] prejudice"  which would seem to call for proof of certain objective acts demonstrating "prejudice," quite apart from the perpetrator's actual mental state, thereby making it a public-safety-type statute; in fact, the state strongly urges this to be the case in its brief. State's answer brief at 7-12. We are therefore left with an inherent ambiguity in the statute as to whether a particular motive or criminal intent is required for enhancement  or, instead, whether the commission of a particular objective act is the requirement for such enhancement. Given this ambiguity, it is not possible to adopt a narrowing construction of the statute, as the Fifth District has done, without rewriting the statute  a course of action which we may not constitutionally undertake, as this is the exclusive province of the legislature.[5]
Beyond that, the instant case perfectly illustrates the ambiguity and confusion generated by this statute. The case involves a fist fight between a white defendant and two black complainants about which the evidence is in sharp dispute as to whether or not the defendant incited the fight by uttering racial and national-origin epithets against the complainants. Viewing the evidence in the light most favorable to the state, however, the state at best established that (1) the defendant committed an unprovoked aggravated battery against Vivian Pringle by fracturing the latter's jaw and knocking out three of Pringle's teeth, (2) the defendant committed an unprovoked battery against Marcel Bruff by striking the latter's face, and (3) the defendant uttered racial and national origin epithets against both complainants during the course of the altercation between the parties, to wit: "niggers" and "boat people." The only additional "act" shown over and above the commission of the underlying felony and misdemeanor was, therefore, the speech uttered by the defendant expressing contempt for the complainants' race and national origin. We are not at all certain, however, whether the statute by its terms punishes speech at all or whether it is strictly confined to non-verbal acts, as the open-ended nature of the statute makes that unclear. In any event, we are obliged by law to interpret a criminal statute to avoid an unconstitutional construction, and it is now doubtful whether a statute such as this may be interpreted to punish, as here, a selected species of "fighting words." See R.A.V. v. City of St. Paul, Minn., ___ U.S. ___, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). Indeed, the Fifth District in Dobbins has opined that "the fact that racial prejudice may be exhibited during the commission of the crime is insufficient" to trigger the statute. Dobbins, 605 So.2d at 923. Obviously, all this makes the statute's application to the instant case entirely problematic.[6]
Moreover, the defendant attempted to defend the case below by contending that he lacked any "intent" to be "prejudice[d]" *923 against the complainants, and that the racial and national origin epithets, if uttered by the defendant [which, in fact, he denied], were unconsciously blurted out in the heat of passion during a highly emotional altercation. The trial judge, however, refused, upon defense request, to instruct the jury that a "prejudicial intent" was required in order for the state to prove the punishment enhancement allegations of the information; nor would she allow counsel to make such an argument to the jury. This is understandable because it is not at all clear whether such prejudicial intent is an essential element of the statute. Conceivably, such intent might be required, as "prejudice" is usually thought of as conscious and deliberate; on the other hand, a person might just as easily be able to commit an act which "evidences prejudice" without being conscious of any "prejudice" at all, as people are at times obtuse to the feelings of others in this respect[7] or in a fit of rage say things they do not later recall. It is therefore entirely unclear whether the required "prejudice" under the statute must be conscious or unconscious.
In addition, the trial jury during its deliberations below sent back a written question to the trial judge asking for a definition of "evidencing"  which the trial judge understandably declined to answer because the statute contains no definition whatever of such an otherwise vague term. In the context of this case, then, there is no doubt that both the judge and jury were unclear as to the meaning of this term; moreover, the trial judge's prior jury instruction merely tracked the statute which obviously failed to define much of anything. This confusion by all concerned is entirely understandable because it is inherent in the nature of the statute.
Finally, we recognize that the statute is one of a variety of "hate crime" statutes which a growing number of states have passed. See Marc L. Fleischauer, Comment, Teeth For A Paper Tiger: A Proposal To Add Enforceability To Florida's Hate Crimes Act, 17 Fla.St.L.Rev. 697, 698 n. 1 (1990). We express no views, generally, on the constitutionality of such legislation, but do note that many such statutes differ in material respects from the Florida statute by utilizing arguably more specific statutory terms. We conclude only that section 775.085(1), Florida Statutes (1991), is unconstitutional as being void for vagueness; the fact that the statute may have been passed based on the noblest of intentions cannot change this result. "No matter how laudable a piece of legislation may be in the minds of its sponsors, objective guidelines and standards must appear expressly in the law or be within the realm of reasonable inference from the language of the law."[8]
For the above-stated reasons, we reverse the defendant's convictions for (1) aggravated battery, as a reclassified first-degree felony, and (2) simple battery, as a reclassified third-degree felony, and remand the cause to the trial court with directions to enter a judgment of conviction and sentence against the defendant for (1) aggravated battery, as a second-degree felony, and (2) battery, as a first-degree misdemeanor.
Reversed and remanded.
NOTES
[1] Brock v. Hardie, 114 Fla. 670, 678-79, 154 So. 690, 694 (1934); see Falco v. State, 407 So.2d 203, 206 (Fla. 1981); Brunelle v. State, 360 So.2d 70, 71 (Fla. 1978); Leeman v. State, 357 So.2d 703, 705 (Fla. 1978); State v. Wershow, 343 So.2d 605, 609 (Fla. 1977); Odom v. Deltona Corp., 341 So.2d 977, 986-87 (Fla. 1976); State v. Weeks, 335 So.2d 274, 276 (Fla. 1976); State v. Dinsmore, 308 So.2d 32, 35 (Fla. 1975); Slaughter v. State, 301 So.2d 762, 763-64 (Fla. 1974), cert. denied, 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1975); State v. Mayhew, 288 So.2d 243, 247-48 (Fla. 1973); Tornillo v. Miami Herald Publishing Co., 287 So.2d 78, 85 (Fla. 1973), rev'd on other grounds, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); State v. Lindsay, 284 So.2d 377, 379 (Fla. 1973); Newman v. Carson, 280 So.2d 426, 430 (Fla. 1973); Smith v. State, 237 So.2d 139, 140 (Fla. 1970) State ex rel. Lee v. Buchanan, 191 So.2d 33, 34 (Fla. 1966); Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102, 104 (1947).
[2] D'Alemberte v. Anderson, 349 So.2d 164, 166 (Fla. 1977).
[3] Sanicola v. State, 384 So.2d 152, 153 (Fla. 1980).
[4] State v. Wershow, 343 So.2d 605, 608 (Fla. 1977).
[5] State v. Elder, 382 So.2d at 690; see also State v. Keaton, 371 So.2d 86, 89 (Fla. 1979); Brown v. State, 358 So.2d 16, 19 (Fla. 1978) ("While we agree ... that in appropriate instances a court may authoritatively construe a statute so that it does not conflict with the federal or state constitution, we cannot condone judicial excision of statute's overbreadth or clarification of its ambiguities where, as here, there is no statutory language to support judicial restructuring.")
[6] We recognize that the defendant has made no express First Amendment attack on the statute and, accordingly, we do not pass on such a question. Nonetheless, a variety of considerations, including free speech concerns, are often involved in a void-for-vagueness challenge to a penal statute, as here, and, accordingly, our discussion herein is limited strictly to that challenge. As previously noted, the Fifth District has recently upheld the statute primarily against a First Amendment challenge, although acknowledging that the challenge was "troubling" in view of R.A.V. v. City of St. Paul, Minn. Id. at 923.
[7] Recently, for example, a white candidate for the presidency of the United States unconsciously offended many in a predominately African-American audience by repeatedly referring to African-Americans as "you people." Miami Herald, July 11, 1992.
[8] Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849, 854 (Fla. 1971).