THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES DAVIS, Defendant-Appellant.

First District (6th Division)   No. 1—94—4262

Opinion filed December 13, 1996.

Daniel D. Yuhas and Elizabeth D. Caddick, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Margaret J. Faustmann, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a bench trial, James Davis (defendant) was convicted of aggravated battery and hate crime and received concurrent two-year prison terms and a $5,000 fine. On appeal, defendant challenges only his hate crime conviction. For the reasons that follow, we affirm.

On March 12, 1994, Michael Whitlow (Whitlow) went to Joe Bailey's Restaurant with a friend, Marc Henry (Henry), to check that night's basketball returns. Each had one drink at the bar before leaving. Whitlow is an African-American, while Henry is Caucasian.

Whitlow testified that, as the two friends exited Joe Bailey's, he was confronted in the parking lot by an unknown person, later identified as the defendant, who yelled, "Nigger, I am going to kick your black ass." Whitlow responded, "What's going on? Why don't you get the f- -k away from me, man." Defendant then proceeded to beat Whitlow, literally, senseless.

Whitlow "awoke" in his own bed at approximately 4:30 a.m., to discover the full extent of his injuries. He had huge bumps across his forehead and blood was coming out of his ears and nose. He had a

"big chip" out of his nose, a "big gash" out of his chin, and his left arm was immobile.

Whitlow went to the emergency room, where he found that he had a rock imbedded in his nose and his skull was fractured. A resident placed his arm in a sling and advised Whitlow to "follow up" with a specialist. Whitlow sustained scarring to his nose and damage to his rotator cuff, which required him to see a physical therapist on a weekly basis.

Henry testified that he was walking four or five paces behind Whitlow in the parking lot when he observed someone approach from the alleyway. The parking lot was well-lighted and Henry had no trouble seeing Whitlow. The approaching man, identified later as defendant, was "yelling and screaming stuff that was incomprehensible." Defendant confronted Whitlow, blocking his path. Defendant then said, "I'm going to kick your black f- - -ing ass." Defendant then proceeded to beat Whitlow, slamming him face first into the pavement. As Henry attempted to intervene, defendant's companion, codefendant Matthew Soraghan (Soraghan), hit him in the face and ribs, knocking him to the ground. Soraghan said, "What are you doing with a nigger? Don't you know that it's St. Patrick's day?"

Henry watched while defendant slammed Whitlow's head into a car bumper, rendering Whitlow unconscious. Defendant proceeded to repeatedly (between 5 and 15 times) kick Whitlow in the head, face, ribs and arm. Henry screamed, "Man, he's killing him ... you gotta stop him." Henry was told to "chill out."

Both men then continued to kick Whitlow's prone body, and when Henry again tried to stop them, he was "punched out" by Soraghan. Patrons began to come out of Joe Bailey's and the two men fled.

Henry described Whitlow's condition as "a bloody mess." Whitlow, Henry estimated, had been unconscious for about 15 minutes. The police arrived 20 minutes later and an ambulance shortly thereafter, although apparently Whitlow declined treatment.

On cross-examination, Henry testified that defendant had been standing in the parking lot "doing gyrations" for about 30 seconds before there was actual physical contact. After Whitlow had been rendered unconscious, defendant slipped and fell, hitting his head on a parked car. At no time did Whitlow swing at or hit defendant.

Detective Robert Petit testified that he administered defendant's lineup on March 18, 1994, six days after the assault. He noticed that defendant's eye was bruised and his upper forehead was cut. Both Whitlow and Henry identified defendant.

Officer McSharry testified that he responded to the call of a disturbance at Joe Bailey's and received information from Henry and

Whitlow that they were attacked for no apparent reason and that they had fought back during the attack.

Soraghan testified that he was overseeing a Budweiser promotion at Joe Bailey's on the night in question. Defendant, a friend of Soraghan's, was also at the bar. Defendant was escorted out of the bar by a bouncer after one or more female patrons complained of receiving unwanted advances. Soraghan followed defendant outside, where he observed defendant standing in the parking lot roughly 40 yards away. Defendant was approached by Whitlow and Henry, and Soraghan heard "vulgarities" and racial slurs exchanged, including, "F--k you white boy," and "F--k you nigger, I'll kick your ass." Whitlow was "dancing around like he wanted to fight." Whitlow and defendant exchanged punches before defendant "pinned" Whitlow to the ground. Whitlow then struck defendant in the head with a beer bottle.

Soraghan separated defendant and Whitlow and observed that defendant was "covered in blood" and had glass fragments in his hair. Soraghan told defendant to meet him at Bruebaker's bar, approximately two blocks away.

Defendant's testimony indicated that the altercation was precipitated by Whitlow's comment, upon seeing defendant in the parking lot, "Talk about a dumb mother f--ker." Defendant responded with the line made famous in "Taxi Driver," "You talking to me?" Whitlow replied, "I'm talking to you." Words were exchanged, including, "What the f--k are you going to do white boy[?]" and "Watch it nigger, I'll kick your ass."

While engaged with Whitlow, defendant was struck from behind with what he believed to be a bottle. Soraghan pulled defendant off Whitlow and told him to meet him at Bruebaker's bar. Defendant sustained several facial lacerations that did not receive medical attention. A passing police car stopped defendant and gave him a ride to the 22nd district station, where he called a friend to take him home.

In rebuttal, Guillermo Ibarra (Ibarra), a busboy employed at Joe Bailey's, testified that as he escorted a waitress to her car, he observed two white men leave the restaurant, followed a short time later by a black man and a white man. The black man and the white man were laughing. Ibarra heard defendant say, "What are you laughing at?" The black man did not respond. Defendant punched Whitlow and kicked him in the head and midsection. Whitlow was rendered unconscious. Defendant did not appear to be injured.

The trial court found defendant guilty of aggravated battery and hate crime. The court's finding was based on resolving the credibility

issues against defendant. Defendant now appeals the conviction for hate crime, alleging that the evidence was insufficient to prove him guilty of that crime beyond a reasonable doubt.

■ The most recent amendment to the hate crime statute upgraded the offense from a Class A misdemeanor to a Class 4 felony, in addition to adding the words "actual or perceived" to encompass situations in which the perpetrator directs his hate crime against a person he believes to be a person of a particular race, color, religion, etc., but who is actually not a member of that class. Section 12—7.1 provides:

> "A person commits hate crime when, by reason of the actual or perceived race, color, creed, religion, ancestry, gender, sexual orientation, physical or mental disability, or national origin of another individual or group of individuals, he commits assault, battery, aggravated assault, misdemeanor theft, criminal trespass to residence, misdemeanor criminal damage to property, criminal trespass to vehicle, criminal trespass to real property, mob action or disorderly conduct as these crimes are defined in *** this Code ***." 720 ILCS 5/12—7.1 (West 1994).

Section 12—7.1(c) further provides a civil remedy to victims suffering injury or damage as a result of a hate crime, independent of any criminal prosecution. 720 ILCS 5/12—7.1(c) (West 1994). The hate crime statute has recently survived constitutional challenge on grounds of freedom of expression, due process and equal protection. See *In re Vladimir P.*, 283 Ill. App. 3d 1068 (1996) (relying on *Wisconsin v. Mitchell*, 508 U.S. 476, 124 L. Ed. 2d 436, 113 S. Ct. 2194 (1993)). No cases, however, have examined in detail the issue of proof beyond a reasonable doubt—basically, what words and conduct constitute a hate crime.

■ On review, a criminal conviction will not be set aside on the grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Stanciel*, 153 Ill. 2d 218, 235 (1992). The relevant question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Kitchen*, 159 Ill. 2d 1, 25 (1994).

■ There is no doubt that defendant perpetrated a battery upon Whitlow. However, whether he did so "by reason of" Whitlow's race is less clear. There is very little precedent dealing with hate crime and its predecessor, ethnic intimidation. A look to other jurisdictions, however, indicates that hate crime convictions are generally the result of more extreme or premeditated racial animus than may be

present in the instant case. See *People v. MacKenzie*, 34 Cal. App. 4th 1256, 1264, 1266, 40 Cal. Rptr. 2d 793, 796, 797 (1995) (before brandishing a .45-caliber handgun at a black family, white defendant said: "This is my [f- - -ing] neighborhood, I'm sick of you [f- - -ing] bozo niggers"; "Nigger bitch, you're dead"; "You are just as [f- - -ed] as those [f- - -ing] nigger dope dealers in Oakland"); *People v. Superior Court (Aishman)*, 10 Cal. 4th 735, 738, 896 P.2d 1387, 1388, 42 Cal. Rptr. 2d 377, 379 (1995) (group of white men, one tattooed with a swastika and "Thank God I'm White," talk about "hitting home runs with Mexicans" before driving to a Hispanic neighborhood and beating three Mexican men with baseball bats); *Mitchell*, 508 U.S. at 480, 124 L. Ed. 2d at 442, 113 S. Ct. at 2196-97 (After seeing the movie "Mississippi Burning," a member of a group of young black men said, "Do you all feel hyped up to move on some white people?" and "You all want to f- -k somebody up? There goes a white boy; go get him," before the group beat a white 14-year-old, causing brain damage); *Richards v. State*, 608 So. 2d 917, 918 (Fla. App. 1992) (before assaulting a black man, white assailant said, "I am tired of you [f- - -ing] niggers being down here. Got a job? Boat people. ... You niggers down here playing music and keeping me up); *Dobbins v. State*, 605 So. 2d 922, 925 (Fla. App. 1992) (group of "skin-heads" beat Jewish youth, saying, "Die Jew boy"); *Ayers v. State*, 335 Md. 602, 611, 645 A.2d 22, 26 (1994) (group of white men decided to "go nigger hunting"); *People v. Prisinzano*, 1996 Misc. 2d 301 (1996) (white neighbor constructed and burned cross on the lawn of the neighboring home as black prospective buyers visit).

In an Illinois decision, two black teenagers were picked up by Chicago police officers while waiting for a bus following a night White Sox game and were driven to a "white neighborhood" where they were attacked by a group of white teenagers shouting, "Let's get those niggers" and "Niggers don't belong in our neighborhood." *People v. Johnston*, 267 Ill. App. 3d 526, 529 (1994).

In the case at bar, the only explicit reference to racial animus or motivation was defendant's comment, "Watch it nigger, I'll kick your ass," or "F- -k you nigger, I'll kick your ass." While either comment is reprehensible and *per se* racist, there is less indication that the assault was *motivated* by racial animus.

Defendant had five beers in less than an hour, had just been expelled from the bar after a "problem" with a female patron, and claims to have believed Whitlow and Henry were laughing at him. Moreover, Ibarra testified to defendant's question, "What are you laughing at?" suggesting that a race-neutral "reason" may have existed to confront Whitlow and Henry. Finally, neither Whitlow nor

Henry told the responding officer that the attack was racially motivated. This case may be, as defendant suggests, an aggravated battery that is transformed into a hate crime by reason of the spoken word "nigger." While we do not suggest that premeditation is a requirement under the hate crime statute, we observe that these facts present a liberal application of its terms.

These observations aside, we rule to affirm defendant's conviction. The trial court specifically found that defendant and codefendant Soraghan were not credible witnesses. The court found further that Ibarra's testimony "corroborated" Whitlow's. The evidence indicates that defendant attacked, and seriously injured, Whitlow after uttering a racial slur. Moreover, even assuming that defendant's decision to initially confront Whitlow and Henry was based on his perception that the two were mocking him, defendant directed his words and assault at Whitlow, an African-American, rather than his white companion. Viewing this evidence in the light that most favors the prosecution, we cannot say that defendant did not assault Whitlow "by reason of his race." Accordingly, defendant's conviction for hate crime is affirmed.

Affirmed.

TULLY, P.J., and CERDA, J., concur.