630 So.2d 1072 (1994)
STATE of Florida, Petitioner,
v.
Richard STALDER, Respondent.
STATE of Florida, Petitioner,
v.
Evan Dean LEATHERMAN, Respondent.
Nos. 79924 and 80126.
Supreme Court of Florida.
January 27, 1994.
Robert A. Butterworth, Atty. Gen., Parker D. Thomson, Sp. Asst. Atty. Gen., Miami, Gregory Durden, Chief of Civ. Rights, Hollywood, and Michael J. Neimand, Director, Crim. Law, Miami, of Dept. of Legal Affairs, for appellant.
D. Robert Silber, D. Robert Silber, P.A., Fort Lauderdale, and Susan B. Gellman, Capital University Law School, OH, on behalf of Richard Stalder and Evan Dean.
No appearance for Leatherman.
Benedict P. Kuehne and Neal R. Sonnett, Sonnett, Sale & Kuehne, P.A., Miami, and Joan S. Peppard, Associate Southern Counsel, FL Regional Office, for Anti-Defamation League.
Mark Stern and Lois Waldman, New York City, for American Jewish Congress, amicus curiae, for Anti-Defamation League, American Jewish Congress, and Intern. Ass'n of Jewish Lawyers and Jurists (American Section).
Jeanne Baker and Christine Stebbins Dahl, Baker & Moscowitz, and Nina E. Vinik, Staff Counsel, American Civ. Liberties Union Foundation of Florida, Inc., Miami, amicus curiae, for The American Civ. Liberties Union Foundation of FL, Inc.
Robert Augustus Harper, Law Firm of Robert Augustus Harper, P.A., Tallahassee, Chairman, FACDL Amicus Curiae Committee, James T. Miller, Co-Chairman, L. Donald Murrell, President, and Robert S. Griscti, Turner & Griscti, P.A., Gainesville, amicus curiae for FL Ass'n of Crim. Defense Lawyers (FACDL).
*1073 SHAW, Justice.
We have for review a trial court order declaring section 775.085, Florida Statutes (1989), commonly referred to as Florida's Hate Crimes Statute, unconstitutional. The order was certified by the district court as passing on an issue of great public importance requiring immediate resolution by this Court. We have jurisdiction. Art. V, § 3(b)(5), Fla. Const. We quash the order.
Herbert Cohen went to Richard Stalder's home on April 14, 1991, to retrieve the earrings of a friend. Stalder then assaulted Cohen and maligned his Jewish heritage, according to the police complaint affidavit:
On the above date the victim went [to] the above address [with] his friend, Denise Avard, [she] being a victim of a battery. The victim made contact with the above subject and when the above answered the door, he stated "Hey Jew boy, what do you want?" The victim stated that he was looking for Denise Avard's earrings. According to sworn statements of both the victim and Denise Avard, the above subject started to yell statements to the victim about his Jewish descent. At one point the above subject pushed the victim and this was witnessed by the subject, Denise Avard. The victim called the police and the above went into his house and locked the door and refused to answer the door. According to the victim, about two months later the victim was by Denise Avard's house and the above subject drove by in a vehicle and yelled at the victim "Hey Jew boy, I'll see you in court."
On the court date the victim went to court and was confronted by the above subject, who stated, "Hey Jew boy, suck on my cock." The victim in giving a statement to this officer feels that the above subject has a hate for Jewish people and that the above subject has a mind set against people who are Jewish. Every time the victim comes in contact with the above subject he makes obscene remarks against him and the Jewish religion. The undersigned detective feels that the victim does have the right to believe that the above subject hates Jews. Statements from both the witness and victim indicate that the charge of battery could be upgraded to a "hate crime."
The State noted as additional proof of Stalder's commission of a "hate crime" the fact that he denounced Cohen during the initial encounter at Stalder's home as a "Jewish lawyer": "Jew boy, you fat Jewish lawyer get the hell off my property... ." and "Jewish kike, come on Jewish lawyer ... I'm going to kick your ass... ."
Stalder was charged with violating section 784.03(1), Florida Statutes (1989) (simple battery) for pushing Cohen, and the penalty was subject to reclassification pursuant to section 775.085(1) from a first-degree misdemeanor to a third-degree felony. The trial court granted Stalder's pretrial motion to dismiss the enhancement charge, adopting Stalder's argument that the statute violates the Free Speech Clause of the United States Constitution. The State appealed and the district court certified the matter as requiring immediate resolution by this Court.[1]
Stalder contends that the statute is both vague and overbroad and punishes pure thought and expression in violation of the First Amendment. The State, on the other hand, contends that section 775.085 is neither unconstitutionally vague nor overbroad  the statute simply enhances punishment for those crimes that are committed because the victim has one of several identified characteristics. It is the State's position that the statute punishes criminal action, not speech, and thus does not implicate the First Amendment.
We note that Florida's district courts are in disagreement on this issue. See Richards *1074 v. State, 608 So.2d 917 (Fla. 3d DCA 1992) (section 775.085 void for vagueness); Dobbins v. State, 605 So.2d 922 (Fla. 5th DCA 1992) (section 775.085 neither vague, overbroad, nor violative of the First Amendment).
Section 775.085 requires penalty enhancement where the commission of any felony or misdemeanor evidences prejudice based on certain characteristics of the victim:
775.085 Evidencing prejudice while committing offense; enhanced penalties. 
(1) The penalty for any felony or misdemeanor shall be reclassified as provided in this subsection if the commission of such felony or misdemeanor evidences prejudice based on the race, color, ancestry, ethnicity, religion, or national origin of the victim:
(a) A misdemeanor of the second degree shall be punishable as if it were a misdemeanor of the first degree.
(b) A misdemeanor of the first degree shall be punishable as if it were a felony of the third degree.
(c) A felony of the third degree shall be punishable as if it were a felony of the second degree.
(d) A felony of the second degree shall be punishable as if it were a felony of the first degree.
Section 775.085(1), Fla. Stat. (1989).[2]
Giving plain meaning to the statute's text and title, the provision punishes all who "evidence," or demonstrate, prejudice in the commission of a crime based on an enumerated characteristic of the victim. The statute has three requirements: 1) The perpetrator must demonstrate prejudice, or bias; 2) the bias must be evidenced in the commission of a crime; and 3) the bias must be based on one or more of the enumerated characteristics of the victim. In assessing the constitutionality of this bias-evidencing crimes statute, we turn to two key United States Supreme Court cases: one dealing with bias-inspired expression; the other addressing bias-motivated crimes.
The United States Supreme Court recently addressed the issue of bias-inspired expression in R.A.V. v. City of St. Paul, ___ U.S. ___, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992). There, a juvenile allegedly burned a cross made of broken chair legs on an African-American family's lawn in the early morning hours of June 21, 1990, and was charged with violating a St. Paul, Minnesota, ordinance that bans use of discriminatory symbols or other bias-inspired expression:
Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.
St. Paul, Minn. Legis.Code § 292.02 (1990). The trial court held that the ordinance violated the First Amendment, but the state supreme court reversed, ruling that because the ordinance reached only expressive activity falling under the rubric of "fighting words" the Free Speech Clause was unavailable. The court noted that this category of expression has traditionally received no First Amendment protection. In re Welfare of R.A.V., 464 N.W.2d 507 (Minn. 1991).
The United States Supreme Court disagreed and held the St. Paul ordinance unconstitutional. The Court reasoned thusly: The First Amendment prevents government from banning expressive activity because of disapproval of content or ideas except in certain narrowly defined instances where the category of expression involved is of little social value, such as where the speech constitutes "fighting words." Even with "fighting words," however, a government restriction must operate across the board and may not classify and ban only certain types of "fighting *1075 words,"[3] for instance only those directed against others based on "race, color, creed, religion or gender." Such a restriction would open the door to government favoritism and protectionism of certain topics and view-points and implicit censorship of disfavored ones, as was the case with the St. Paul ordinance:
Although the phrase in the ordinance, "arouses anger, alarm or resentment in others," has been limited by the Minnesota Supreme Court's construction to reach only those symbols or displays that amount to "fighting words," the remaining, unmodified terms make clear that the ordinance applies only to "fighting words" that insult, or provoke violence, "on the basis of race, color, creed, religion or gender." Displays containing abusive invective, no matter how vicious or severe, are permissible unless they are addressed to one of the specified disfavored topics. Those who wish to use "fighting words" in connection with other ideas  to express hostility, for example, on the basis of political affiliation, union membership, or homosexuality  are not covered. The First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects.
R.A.V., ___ U.S. at ___, 112 S.Ct. at 2547. The Court noted in conclusion that an ordinance operating across the board would have precisely the same salutary effect in combating discrimination but would run no risk of government favoritism and censorship.
A year after it decided R.A.V., the United States Supreme Court addressed the constitutionality of a state hate crimes statute punishing bias-motivated crimes in Wisconsin v. Mitchell, ___ U.S. ___, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993). There, a group of African-American youths randomly selected and severely beat a white youth in reaction to a scene in the motion picture "Mississippi Burning" wherein an African-American child was beaten while praying. The defendant, Mitchell, was convicted of aggravated battery and his penalty enhanced under the Wisconsin statute, which provides for penalty enhancement whenever the victim of certain crimes is deliberately selected on the basis of enumerated characteristics:
(1) If a person does all of the following, the penalties for the underlying crime are increased as provided in sub. (2):
(a) Commits a crime under chs. 939 to 948.
(b) Intentionally selects the person against whom the crime under par. (a) is committed or selects the property which is damaged or otherwise affected by the crime under par. (a) because of the race, religion, color, disability, sexual orientation, national origin or ancestry of that person or the owner or occupant of that property.
Wis. Stat. § 939.645 (1989-1990).
The United States Supreme Court upheld Mitchell's enhanced penalty, ruling that because the Wisconsin statute punishes bias-motivated criminal conduct rather than the expression of ideas the First Amendment is not implicated. In response to Mitchell's First Amendment claims, the Court pointed out the following: Courts have traditionally taken the defendant's motive into account during sentencing; racial animus has served as a basis for penalty-enhancement in prior cases; motive plays the same role under the Wisconsin statute that it does under clearly valid antidiscrimination statutes; the Wisconsin legislature reasonably concluded that bias-inspired crime inflicts greater societal harm and is thus deserving of greater punishment than unbiased crime; and the First Amendment has traditionally allowed the evidentiary use of defendants' speech to establish the elements of a crime.
The Wisconsin statute punishes only those who "intentionally select" a victim of a crime "because of" enumerated characteristics, i.e., it applies only where the underlying crime is bias-motivated. Although such crimes are generally coupled with a bigoted belief or racist conviction, the First Amendment is not implicated because it is the prejudiced conduct in selecting a victim, not the defendant's ideology, that is targeted.
*1076 We conclude that our Florida statute contains elements similar to both the St. Paul ordinance struck down in R.A.V. and the Wisconsin statute upheld in Mitchell. As noted above, section 775.085 proscribes bias-evidencing crimes. A bias-evidencing crime as set out in the statute's title and text is any crime wherein the perpetrator "evidences prejudice" based on one or more of the enumerated characteristics of the victim "while committing [the] offense." This category of conduct has been viewed as embracing two broad classes of offenses. See generally Richards; Dobbins.
First are those offenses committed because of prejudice. For instance, A beats B because B is a member of a particular racial group. This class of offense is virtually identical to the bias-motivated crimes proscribed by the valid Wisconsin statute in Mitchell. The targeted activity  the selection of a victim  is an integral part of the underlying crime. As such, the conduct is not protected speech at all, but rather falls outside the First Amendment and may be banned.
Second are those offenses committed for some reason other than prejudice but that nevertheless show bias in their commission. For example, A beats B because of jealousy, but in the course of the battery calls B a racially derogatory term. The targeted conduct here  the expression of bias  is related to the underlying crime in only the most tangential way: The expression and crime share the same temporal framework, nothing more. This tenuous nexus, which amounts to mere temporal coincidence, is irrelevant for constitutional purposes. The proscribed conduct consists of pure expression indistinguishable from the bias-inspired expression targeted by the St. Paul ordinance in R.A.V. and cannot be selectively banned.
The question before us is whether section 775.085 can pass constitutional muster by being read narrowly as proscribing the first class of conduct. We note that in assessing a statute's constitutionality, this Court is bound "to resolve all doubts as to the validity of [the] statute in favor of its constitutionality, provided the statute may be given a fair construction that is consistent with the federal and state constitutions as well as with the legislative intent." State v. Elder, 382 So.2d 687, 690 (Fla. 1980). Further, "[w]henever possible, a statute should be construed so as not to conflict with the constitution. Just as federal courts are authorized to place narrowing constructions on acts of Congress, this Court may, under the proper circumstances, do the same with a state statute when to do so does not effectively rewrite the enactment." Firestone v. News-Press Publishing Co., 538 So.2d 457, 459-60 (Fla. 1989) (citations omitted).
Here, our legislature has determined that prejudice resulting in criminal acts against members of particular groups inflicts great individual and societal harm and is thus deserving of enhanced punishment. The legislature's apparent intent is to discourage criminal acts directed against groups that have historically been subjected to prejudicial acts. A reading of section 775.085 as embracing only bias-motivated crimes is entirely consistent with this intent. We note that the Fifth District Court of Appeal has so read the statute:
Appellant first contends that the statute is vague and overbroad. He contends the statute is susceptible of applying to protected speech because it does not require that the prejudice alleged have any specific relationship to the commission of the crime.
This argument seems to concede that if the statute permits enhancement only upon proof, beyond a reasonable doubt, that appellant committed the battery motivated in whole or in part, because Daly was Jewish, the enhanced penalty would be appropriate.
That is precisely the way we read the statute....
Appellant urges that the language can be read to apply to a situation in which the defendant commits a race, color or religious neutral crime (for example, resisting arrest because he thinks he's innocent), but during the commission of the offense makes a racial slur. We do not agree. The statute requires that it is the commission of the crime that must evidence the prejudice; the fact that racial prejudice *1077 may be exhibited during the commission of the crime is itself insufficient.
Dobbins, 605 So.2d at 923.
Based on the foregoing, we hold that section 775.085, Florida Statute (1989), applies only to bias-motivated crimes. So read, the statute is constitutional. A bias-motivated crime for purposes of this statute is any crime wherein the perpetrator intentionally selects the victim because of the victim's "race, color, ethnicity, religion, or national origin."
It may seem doubly vile to members of our legal community to denigrate another for being a "Jewish lawyer," as Mr. Stalder allegedly did, but such an act standing alone is every citizen's right  so long as the First Amendment breathes. To assault another solely because he or she is a "Jewish lawyer," on the other hand, is no one's right. When protected speech translates into criminal conduct, even the Free Speech Clause balks. "While the First Amendment confers on each citizen a powerful right to express oneself, it gives the [citizen] no boon to jeopardize the health, safety, and rights of others." Operation Rescue v. Women's Health Center, Inc., 626 So.2d 664, 675 (Fla. 1993).
We quash the trial court's order finding section 775.085, Florida Statutes (1989), unconstitutional and remand for proceedings consistent with this opinion.[4] We approve Dobbins and disapprove Richards.
It is so ordered.
OVERTON, McDONALD and GRIMES, JJ., concur.
KOGAN, J., concurs with an opinion.
HARDING, J., dissents with an opinion, in which BARKETT, C.J., concurs.
KOGAN, Justice, concurring.
The majority correctly notes that narrowing constructions may not usurp the authority of the legislature to enact laws. Schmitt v. State, 590 So.2d 404 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1572, 118 L.Ed.2d 216 (1992). However, it also is clear that narrowing constructions are within the Court's discretion whenever it is possible to limit the statute to what is constitutional, and the statute as so limited is complete in itself and consistent with the stated or obvious legislative intent. Garden v. Frier, 602 So.2d 1273 (Fla. 1992); Waldrup v. Dugger, 562 So.2d 687 (Fla. 1990); Firestone v. News-Press Publishing Co., 538 So.2d 457 (Fla. 1989).
These rules rest on a simple rationale. A narrowing construction by definition "saves" a statute by reducing its scope to cover what the constitution permits and what the legislature intended and what will be complete and functional. Where such a reduction is possible and other constitutional rights remain intact, a court does not offend the doctrine of separation of powers by adopting the narrowing construction. Rather, the Court is merely enforcing what the legislature intended as nearly as is possible within constitutional constraints. In such a situation, striking the statute would be a far more serious invasion of the legislature's authority  a conclusion especially compelling where, as here, the statute promotes crucial societal policies.
In the past, we have applied these same principles even where statutes were substantially vaguer than the Hate Crimes Statute or where the narrowing construction required far more detail than is necessary here, provided the public importance was great enough. For example, our decision in Garden engaged in a lengthy narrowing construction of the statutory term "professional" as used in the professional malpractice statute. The legislature had used the word "professional" without defining it, and legislators involved in drafting the statute actually had noted that they did not want to define the term for fear of offending persons engaged in particular occupations. Confronting that situation, the Court adopted a seven-paragraph definition of "professional" that reduced the scope of that term to something less than what the general statutory language at first *1078 blush comprehended.[5]Garden v. Frier, 602 So.2d 1273, 1275-77.
In a somewhat similar way the Court in Waldrup also made an effort to preserve an important statute. In Waldrup, a portion of Florida's gain-time law was unconstitutional, but severing that particular portion would have rendered the statute incomplete and meaningless. After being requested by the State,[6] the Court concluded that it had authority to create a "hybrid" statute comprised of the constitutional portions of the statute combined with an earlier, superseded statutory section. The two components together were constitutional, were wholly consistent with legislative intent, and constituted a complete and functional statute. Waldrup, 562 So.2d at 693-94 (citing Cramp v. Board of Public Instruction, 137 So.2d 828, 830 (Fla. 1962)). The emphasis throughout Waldrup was precisely on what occurs in other similar cases: finding those statutory elements that are constitutional, that leave the statute complete, and that are consistent with legislative intent.
On the whole, the decision to adopt a narrowing construction is one that lies within the Court's discretion. I also realize that sound policy dictates the discretion should not often be exercised.[7] Cases such as Garden and Waldrup are rare. Yet I believe this Court has a moral duty to adopt a saving construction, as the majority does today, in cases where important societal goals are at stake. And there can be no question that the Hate Crimes Statute involves such a goal.
The riots that have erupted in our cities show the great ill that follows on the heels of a poisonous perception that law is doing nothing about bigotry. Florida has had a far more tragic experience with racial animus and other forms of group-based intolerance than all but a few other states. We are a state in which many still remember  and many still suffer  the sting of racism, the bigoted slurs endured in the workplace, the harassment aimed at deeply felt religious or cultural beliefs, the hateful epithets hurled at people because of the immutable characteristics with which they were born.
I do not dispute that people have a right to hold intolerant and bigoted opinions. But that is far different matter than saying they have a right to act upon those opinions. Our law has long recognized that the expression of opinions alone deserves far greater protection than does an act that only coincidentally involves such expression. Schmitt, 590 So.2d at 412. A person has a right to think hateful thoughts about the black, the Jew, the woman, or some minority, or even to peaceably voice the hatred. But that same person has no right to commit a crime as a means of "expressing" the hatred.
Criminal motive is not and never has been a protected form of expression. Wisconsin v. Mitchell, ___ U.S. ___, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993). The criminal motive coupled with the crime is what the law may prohibit, even if motive is conveyed by speech or other expression. Id. That self-evidently was the evil the legislature intended to root out here.
Florida is a state of great diversity, with a population of many races, creeds, lifestyles, and beliefs. The Florida Legislature through the Hate Crimes Statute recognized what we all know to be true: that some of these races, creeds, lifestyles, and beliefs are singled out for special injury by those whose lives are steeped in intolerance and hatred. Our society rightfully should have the authority to root out this intolerance through *1079 the use of its laws.[8] That is only in keeping with our common goal of preserving law, order, life, and liberty. And because that goal is so vitally important to our society, I believe the Court in this instance must honor its moral obligation to construe this statute so it will protect those it was intended to protect.
I am mindful of the arguments against this statute's constitutionality, and I do not disagree that the Hate Crimes law is a far from perfect model of draftsmanship when viewed through the cold logic of constitutional jurisprudence. However, the great jurist Oliver Wendell Holmes once noted that the life of the law has not been logic; it has been experience. Cases such as this one show how entirely correct Holmes was.
When courts measure laws in the sterile vacuum of abstract logic, they risk tripping over imperfection while ignoring real-world consequences. Law is not an exact science. It is the ever-inexact, ever-imperfect means by which people accommodate themselves to each other and to the perils of life in general. To expect laws to be perfect is as absurd as asking the same of the people who made them. Legislators are not omniscient foreseers of all possible problems the laws must confront. They make mistakes and they overlook what, with perfect hindsight, may seem all too obvious.
For this reason, I believe there are times when the courts forsake their duty to society's greater good by viewing through the harsh but perfect lens of logic what rightly must be seen through the more tolerant but imperfect pane of human experience. This is one of those times. An important reason courts exist is so that laws may be reexamined in the crucible of everyday application, their imperfections identified, and the laws better adjusted to the reality the legislature may not have measured precisely enough.
This is a process that happens, often silently, often self-consciously, but not infrequently. And there is nothing wrong with it when the courts are merely achieving what the people through their legislators intended. Far from being undemocratic, the judicial refinement of the law is one part of democracy's genius. It is the very life of our common-law heritage. Courts properly exercise this power with great restraint, but the reason the power exists is precisely because of cases like this one. The Hate Crimes Statute is one important means by which the state is trying to restrain bigotry and ensure equality for all our people. Striking this statute would be a fearful thing to me, especially based on imperfections that in the final analysis are easily and constitutionally remedied.
I fully concur with the majority.
HARDING, Justice, dissenting.
I respectfully dissent from the majority opinion in this cause. I find the majority's analysis crosses the line we have consistently drawn prohibiting the courts from rewriting legislation. Brown v. State, 358 So.2d 16, 20 (Fla. 1978) ("The Florida Constitution requires a certain precision defined by the legislature, not legislation articulated by the judiciary."); see also art. II, § 3, Fla. Const.
The apparent goals of section 775.085, Florida Statutes (1989) are laudable, and I firmly believe that bias-motivated conduct is reprehensible and deserving of enhanced punishment. Yet no matter how commendable I find an enhanced penalty for bias-motivated criminal conduct, section 775.085  by design or by unartful wording  also imposes an enhanced penalty for conduct that "evidences prejudice while committing [an] offense."[9] The Legislature's use of the verb *1080 "evidence" indicates that the statute applies not only to offenses motivated by bias, but also to displays of bias that happen to occur during the commission of a crime.
In R.A.V. v. City of St. Paul, ___ U.S. ___, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992), the United States Supreme Court held unconstitutional a municipal ordinance that banned speech on the subjects of "race, color, creed, religion or gender." Id. ___ U.S. at ___, 112 S.Ct. at 2547. The Court found the ordinance was impermissibly content-based because it banned pure expression and held that "[t]he First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects." Id. Similarly, Florida's Hate Crimes Statute bans pure expression and thus is impermissibly content-based.
The Supreme Court in Wisconsin v. Mitchell, ___ U.S. ___, 113 S.Ct. 2194, 124 L.Ed.2d 436 (1993), made it clear that bias-motivated criminal conduct can be punished by an enhanced penalty. The Wisconsin statute does not implicate the First Amendment because the enhanced penalties, according to Mitchell, apply to those who use prejudiced conduct in selecting a victim. By contrast, the plain language of the Florida statute indicates that the statute is not confined to crimes motivated by bias. The statute also punishes pure expression that may be unrelated to the underlying crime, so I believe it runs afoul of the First Amendment.
In my judgment, the majority reaches its conclusion by engaging in judicial legislation. A court may, under proper circumstances, adopt a narrowing construction when to do so does not effectively rewrite the statute. Firestone v. News-Press Publishing Co., 538 So.2d 457, 459-60 (Fla. 1989). In this case, the majority has gone too far in trying to give an unconstitutional statute a constitutional meaning. The Legislature spoke clearly when it chose the word "evidence" for the statute's text and title. In holding the statute constitutional, the majority ignores the plain meaning of "evidence" and narrows the verb to mean "motivated." While this Court should, when possible, construe statutes to avoid conflict with the Constitution, we have held that "courts may not vary the intent of the legislature with respect to the meaning of the statute in order to render the statute constitutional." Metropolitan Dade County v. Bridges, 402 So.2d 411, 414 (Fla. 1981), receded from on other grounds by Makemson v. Martin County, 491 So.2d 1109 (Fla. 1986), cert. denied, 479 U.S. 1043, 107 S.Ct. 908, 93 L.Ed.2d 857 (1987). The majority has impermissibly narrowed section 775.085 and now puts its own legislative gloss on the statute.
The Legislature could easily rewrite this statute in a constitutional manner. This would respect the separation of powers embodied in our constitution and would save the Court from legislating from the bench.
BARKETT, C.J., concurs.
NOTES
[1] The record before us in State v. Leatherman, No. 80,126, contains scant facts. Leatherman was charged with aggravated assault for pointing a handgun at and threatening the victim. He also was charged with violating section 775.085(1), Florida Statutes (1989), for evidencing prejudice during the assault. The same trial judge that presided over the Stalder case granted Leatherman's pretrial motion to dismiss the hate crimes charge for the same reasons. The district court certified the case here and the two cases were consolidated. The State has submitted essentially the same brief in both cases and Leatherman has chosen to take no action pending our ruling in State v. Stalder, No. 79,924.
[2] Section 775.085 has since been amended to include "sexual orientation" in its list of proscribed factors and to provide:

(3) It shall be an essential element of this section that the record reflect that the defendant perceived, knew, or had reasonable grounds to know or perceive that the victim was within the class delineated herein.
§ 775.085, Fla. Stat. (1991).
[3] The Court noted several exceptions to this rule that are inapplicable here. See R.A.V. v. City of St. Paul, ___ U.S. ___, ___, 112 S.Ct. 2538, 2545-47, 120 L.Ed.2d 305 (1992).
[4] We quash the corresponding order in consolidated case State v. Leatherman, No. 80,126. See supra note 1.
[5] A similar, though less sweeping, narrowing construction has been applied in dealing with potentially vague language in Florida's death-penalty statute, where "aggravating factors" frequently are challenged as vague. See, e.g., Johnson v. Singletary, 612 So.2d 575 (Fla.), cert. denied, ___ U.S. ___, 113 S.Ct. 2049, 123 L.Ed.2d 667 (1993).
[6] The State here also has requested that this Court adopt a saving construction.
[7] I am aware that the Court sometimes has said it lacks discretion to adopt a narrowing construction in particular cases. But I believe that statement, taken literally, renders cases like Garden and Waldrup inexplicable. The more accurate conclusion is that the Court is simply declining to exercise its discretion in these cases, rather than that the Court completely lacks discretion.
[8] Indeed, we already are doing so in highly similar contexts. For example, a man may think all women incompetent, but he cannot lawfully express those opinions at the workplace in a manner that creates a hostile work environment for women. § 760.10, Fla. Stat. (Supp. 1992). A woman may hate blacks, but she cannot refuse to hire one simply because of race. Id. A landlord may think Jews evil, but he cannot refuse to rent to a Jewish couple because of their ethnic background. § 760.23, Fla. Stat. (1991).
[9] As noted in the majority opinion, the title of section 775.085, Florida Statutes (1989) reads: "Evidencing prejudice while committing offense; enhanced penalties." (Emphasis added.) Subsection (1) says: "The penalty for any felony or misdemeanor shall be reclassified as provided in this subsection if the commission of such felony or misdemeanor evidences prejudice based on the race, color, ancestry, ethnicity, religion, or national origin of the victim... ." (Emphasis added.)