677 So.2d 385 (1996)
STATE of Florida, Appellant,
v.
William HART, Appellee.
No. 95-1188.
District Court of Appeal of Florida, Fourth District.
July 17, 1996.
Rehearing and/or Clarification and/or Certification Denied August 20, 1996.
Michael J. Satz, State Attorney, J. Scott Raft, Assistant State Attorney, Fort Lauderdale; Robert A. Butterworth, Attorney General, Tallahassee; and Joan Fowler, Assistant Attorney General, West Palm Beach, for appellant.
Alan H. Schreiber, Public Defender, and Diane M. Cuddihy, Assistant Public Defender, Fort Lauderdale, for appellee.
GROSS, Judge.
Appellee William Hart was charged with corruption by threat under section 838.021(1) as enhanced by section 775.085[1], Florida Statutes (1995). He moved to dismiss the enhancement portion of the charge under Florida Rule of Criminal Procedure 3.190(c)(4). After hearing testimony at an evidentiary hearing conducted under Rule 3.190(d), the trial court granted the motion and dismissed that part of the charge based on section 775.085.
*386 A rule 3.190(c)(4) motion to dismiss is akin to a civil motion for summary judgment. See State v. West, 262 So.2d 457 (Fla. 4th DCA 1972). The motion is decided only on the undisputed facts. In considering the evidence, the court must draw all inferences in favor of the state and against the defendant. E.g., State v. Pastorius, 419 So.2d 1137, 1139 (Fla. 4th DCA 1982). The trial court may neither weigh conflicting evidence nor pass on the credibility of witnesses nor determine disputed issues of fact. West, 262 So.2d at 458. Motive and intent are states of mind usually inferred from the conduct of the parties and the surrounding circumstances; they are questions for the trier of fact that are generally not appropriate for a motion to dismiss. State v. J.T.S., 373 So.2d 418 (Fla. 2d DCA 1979), overruled on other grounds by, D.K.D. v. State, 470 So.2d 1387 (Fla. 1985); Sanders v. Wausau Underwriters Ins. Co., 392 So.2d 343, 345 (Fla. 5th DCA 1981); Burke v. Harbor Estates Assocs., Inc., 591 So.2d 1034, 1037 (Fla. 1st DCA 1991) (intent is issue of fact); see School Bd. of Leon County v. Hargis, 400 So.2d 103, 107 (Fla. 1st DCA 1981)(motivation ordinarily question of fact).
Viewed in the light most favorable to the state, the evidence was that a Caucasian traffic officer stopped Hart for a traffic violation. Believing Hart to be under the influence of alcohol, the officer requested that a DUI task force officer take over the investigation. Although unhappy with the stop, Hart directed no personal attacks at the Caucasian officer.
The officer who responded to handle the DUI inquiry was Barry Whitfield, an African American. Hart warned him that if Whitfield arrested him he would sue and get Whitfield's job. After conducting field sobriety tests, Officer Whitfield placed Hart under arrest and handcuffed him. Hart then screamed at Whitfield, "I'm going to get you, nigger! I'm going to find out where you live. I've got connections. I'm going to hurt your family, and hurt you and take you out." Hart warned the officer that his address was easily accessible, so it would be easy to locate the officer's home. Hart detailed the events that would follow, including a cross burning in Whitfield's yard "with plenty of rounds." While Whitfield drove him to the breath testing facility, Hart repeatedly referred to the officer as a "nigger" in conjunction with numerous threats and references to previous attacks on police. Hart indicated that an instructor at the police academy "hates niggers," inferring that the law enforcement hierarchy shared his opinions. At the breath testing facility, he repeated his intent to kill Whitfield, imitating the sound of a gun being fired. During transport from the breath testing facility to the Broward Sheriff's Office, Hart continually used the slur "nigger" in conjunction with threats of violence and intimidation.
The trial court based its dismissal upon State v. Stalder, 630 So.2d 1072 (Fla.1994). In Stalder the supreme court construed section 775.085 as applying only to "bias-motivated crimes," which it defined as "any crime wherein the perpetrator intentionally selects the victim because of the victim's `race, color, ethnicity, religion, or national origin.'" Id. at 1077. The court noted that this interpretation of the statute was consistent with the legislative intent to "discourage criminal acts directed against groups that have historically been subjected to prejudicial acts." Id. at 1076. The supreme court distinguished a bias motivated crime from crimes committed for some reason other than prejudice, but which evidence prejudice during their commission:
For example, A beats B because of jealousy, but in the course of the battery calls B a racially derogatory term. The targeted conduct herethe expression of bias is related to the underlying crime in only the most tangential way: The expression and crime share the same temporal framework, nothing more.
Id. A crime which shows prejudice only during its commission and not in its genesis falls outside the section 775.085 proscription.
To qualify criminal conduct for sentencing enhancement under section 775.085, Stalder does not require that prejudice be the sole motivating factor for the underlying crime. The supreme court cited with approval Dobbins v. State, 605 So.2d 922 (Fla. 5th DCA 1992), affirmed, 631 So.2d 303 (Fla.1994), which stated that an enhanced penalty was *387 appropriate under the statute if a battery was motivated "in whole or in part" because of religious prejudice. State v. Stalder, 630 So.2d at 1076. The essence of criminality under section 775.085 is that prejudice be a significant factor in bringing about the commission of the underlying crime, i.e., but for the racial enmity, the underlying crime would not have occurred. To use the Stalder analogy quoted above, jealousy could be one motive for A's battery of B, but the prosecution could demonstrate that the beating was planned and implemented because of the victim's race, a showing which would trigger sentencing enhancement under section 775.085. Prejudice is no less odious, no less worthy of deterrence, because it mixes with jealousy to become the impetus for a criminal act. This view comports with Stalder's First Amendment analysis, since it focuses the factfinder's inquiry on the prejudiced conduct in selecting a victim and not on a defendant's offensive language.
Under the state's best case, the "intent or purpose" of Hart's threats were to influence Officer Whitfield to "unarrest" him, giving rise to a violation of section 838.012(1), Florida Statutes (1995). Comparing Hart's treatment of the Caucasian officer with that of the African American officer, and considering the quantity, detail, and venom of Hart's racist comments, a factfinder might also conclude that prejudice was a significant factor inducing him to make the threats, thus justifying a section 775.085 enhancement. Hart might defend this case on two levels: that his words were merely drunk talk without the intent to influence the officer and that race was not a significant motive in his selection of Whitfield as the target of his threats. The issues in this case are ones of fact to be resolved by the trier of fact upon proper instruction from the court. See Richards v. State, 643 So.2d 89, 91 (Fla. 3d DCA 1994). For these reasons, resolution of this case on a rule 3.190(c)(4) motion to dismiss was erroneous.
REVERSED AND REMANDED.
GLICKSTEIN and STONE, JJ., concur.
NOTES
[1] Section 775.085(1) mandates that the penalty for a crime be enhanced "if the commission of such felony or misdemeanor evidences prejudice based on the race, color, ancestry, ethnicity, religion, sexual orientation, or national origin of the victim."