PER CURIAM.
The State of Florida appeals the trial court's order dismissing charges brought against Anthony Joseph Avella for practicing veterinary medicine without a license and for cruelty to animals. The charges arose out of Avella's use of a homemade device in an attempt to treat a problem that his miniature dachshund, Thor, was having. Avella asserts that he attempted the treatment himself because he could not afford veterinary treatment. After Avella's home-treatment injured the dog, he took Thor to a local veterinarian for professional treatment. The veterinarian insisted that the dog, who allegedly was in pain and may have had internal injuries, needed to go to an advanced care veterinary facility to treat the original condition and the home-treatment caused injury; however, Avella did not do so based on claimed lack of funds.[1] We affirm dismissal of the charge that he was practicing veterinary medicine without a license, but reverse and remand so that the prosecution for the cruelty to animals charge may proceed beyond the pleadings stage.[2]
A motion to dismiss should be granted "[o]nly where the most favorable construction to the State would still not establish a prima facie case of guilt." State v. Taylor , 16 So. 3d 997, 999 (Fla. 5th DCA 2009). "[E]ven if the trial court doubts the sufficiency of the State's evidence, it may not grant a motion to dismiss criminal charges simply because it concludes that the case will not survive a motion for judgment of acquittal." Id. at 1002. A trial court's ruling on a motion to dismiss is reviewed by this court de novo. State v. N.F ., 924 So. 2d 912, 913 (Fla. 5th DCA 2006).
UNLICENSED PRACTICE OF VETERINARY MEDICINE
Section 474.213(1)(i), Florida Statutes (2018), forbids a person from practicing veterinary medicine without a license; Avella is not a veterinarian and is certainly not licensed in Florida for that profession. The State relies upon a related statutory provision for its argument that Avella was practicing veterinary medicine without a license. Section 474.202 defines "practice of veterinary medicine" and "veterinary medicine" as follows:
*209 "Practice of veterinary medicine" means diagnosing the medical condition of animals and prescribing, dispensing, or administering drugs, medicine, appliances, applications, or treatment of whatever nature for the prevention, cure, or relief of a wound, fracture, bodily injury, or disease thereof; performing any manual procedure for the diagnosis of or treatment for pregnancy or fertility or infertility of animals; or representing oneself by the use of titles or words, or undertaking, offering, or holding oneself out, as performing any of these functions. The term includes the determination of the health, fitness, or soundness of an animal.
"Veterinary medicine" includes, with respect to animals, surgery, acupuncture, obstetrics, dentistry, physical therapy, radiology, theriogenology, and other branches or specialties of veterinary medicine.
§ 474.202(9), (13), Fla. Stat. (2018).
Avella relies instead upon the statutory exemptions found in section 474.203(5)(a), which permit a person to care for her or his own animals, as he claims that he was just trying to help Thor. The pertinent part of that section exempts the following class of people from the regulations of chapter 474:
Any person, or the person's regular employee, administering to the ills or injuries of her or his own animals, including, but not limited to, castration, spaying, and dehorning of herd animals ....
The State takes the position that Avella's argument, taken to the extreme, would permit animal owners to perform amputations and open surgery on their pets, which of course the State says would be absurd. Avella takes the argument to the other extreme, saying that the State's view would criminalize the actions of any owner who assists in delivery of puppies, bobs a dog's tail, or renders other minor care. Neither side cites any cases regarding the interpretation of the statute.
Avella's argument, that the purpose of the statute was to prevent unlicensed veterinary care provided to the public rather than to criminalize the care an owner provides to his or her animals, is based upon section 474.201, which reads as follows:
The Legislature finds that the practice of veterinary medicine is potentially dangerous to the public health and safety if conducted by incompetent and unlicensed practitioners. The legislative purpose in enacting this chapter is to ensure that every veterinarian practicing in this state meet minimum requirements for safe practice....
Given the stated purpose and statutory exemptions for caring for one's own animals, we hold that the trial court did not err in dismissing Count I for unlicensed practice of veterinary medicine under these circumstances. When the Court construes a statute, "we look first to the statute's plain meaning." Moonlit Waters Apartments, Inc. v. Cauley , 666 So. 2d 898, 900 (Fla.1996). Furthermore, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld , 450 So. 2d 217, 219 (Fla. 1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931) ); see Fla. Convalescent Ctrs. v. Somberg , 840 So. 2d 998, 1000 (Fla. 2003).
ANIMAL CRUELTY
As for Count II, animal cruelty, the State argues that Avella's conduct in using a homemade tool to remove bone fragments from Thor's rectum and then failing *210 to take Thor to a qualified advanced care clinic fits under section 828.12(2), Florida Statutes (2018), which reads:
A person who intentionally commits an act to any animal, or a person who owns or has the custody or control of any animal and fails to act, which results in the cruel death, or excessive or repeated infliction of unnecessary pain or suffering, or causes the same to be done, commits aggravated animal cruelty ....
Avella argues that he had no intention of harming Thor and was only trying to relieve his dog's problem himself because he lacked the money to pay for veterinary and advanced veterinary care. Looking at the statutory language, we agree with the State's argument that the statute does not require a specific intent to cause pain, but rather punishes an intentional act that results in the excessive infliction of unnecessary pain or suffering. See Reynolds v. State , 842 So. 2d 46, 50 (Fla. 2002). Even if Avella were correct that the jury should consider his motivation and intent in home-treating Thor, questions of motive, intent, or knowledge are generally not appropriately decided in a motion to dismiss, but instead are left to the trier of fact. See, e.g. , State v. Wilkinson , 724 So. 2d 614, 615 (Fla. 5th DCA 1998) ; State v. Hart , 677 So. 2d 385, 386 (Fla. 4th DCA 1996). For those reasons, we find that the trial court erred in dismissing Count II; thus, we remand for further proceedings on the animal cruelty charge.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS
ORFINGER, EDWARDS and GROSSHANS, JJ., concur.

Avella asserts in his answer brief that he took Thor to a second veterinarian who supposedly also refused to treat the dog. However, since the charges were dismissed at the pleadings stage, it is inappropriate at this point to consider that claim.

Thor ultimately received treatment, recovered, and after a period of time, was returned to Avella.