602 So.2d 1273 (1992)
Richard GARDEN, et ux., Petitioners
v.
J. Sherman FRIER, etc., Respondents.
No. 78156.
Supreme Court of Florida.
July 2, 1992.
*1274 Martin S. Page, Lake City, for petitioners.
William R. Slaughter, II of Slaughter and Slaughter, Live Oak, for respondents.
PER CURIAM.
We have for review Garden v. Frier, 580 So.2d 873 (Fla. 1st DCA 1991), which certified the following question of great public importance:
For the purposes of [the] professional malpractice statute is a land surveyor a professional?
Id. at 875. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Land surveyor J. Sherman Frier allegedly performed a negligent land survey for his clients, Richard and Dorothy Garden. The Gardens sued for malpractice slightly more than two years after discovering the error. In response, Frier raised as an affirmative defense the two-year statute of limitation for "professional" malpractice. § 95.11(4), Fla. Stat. (1989). The trial court agreed that the two-year statute applied. Expressing some reservations, the district court affirmed.
The sole issue presented on review is whether land surveyors may avail themselves of the statute's protections. In other words, are they "professionals" for purposes of the statute of limitations. If they are not, then the statute is inapplicable by its own terms.[1]
The question presented here is not new. When we last addressed this question in Pierce v. AALL Insurance Co., 531 So.2d 84 *1275 (Fla. 1988), we noted that the legislature with express knowledge of its membership had neglected to define the term "professional" for purposes of the professional malpractice statute. Indeed, one legislator told other members that the question was being left for the judiciary to decide because a precise definition might hurt some people's feelings. Id. at 86. We then urged the legislature to reconsider this matter and adopt a precise definition. Unfortunately, the legislature has declined to provide the necessary definition.
In light of the confusion that has arisen since Pierce, our first-blush inclination was to strike the statute on grounds of vagueness, which effectively would eliminate the considerable protections the statute affords to all professionals in Florida. On further reflection, we have decided that this action is foreclosed by our earlier opinion in Pierce, where we stated:
[I]f, under the laws and administrative rules of this state a person can only be licensed to practice an occupation upon completion of a four-year college degree in that field, then that occupation is a profession.
Pierce, 531 So.2d at 87. Were we to recede from Pierce entirely and declare the statute unenforceable on vagueness grounds, we believe that serious confusion would result. Moreover, it is clear that the legislature intended for some occupations to receive the benefits of the statute. There simply is no indication which occupations these might be.
Accordingly, we continue to adhere to the basic definition adopted in Pierce and quoted above, with modification discussed more fully below. This definition will remain in force until such time as the legislature provides more complete guidance on this subject.
In so stating, however, we acknowledge that elsewhere in Pierce we created confusion by suggesting that the equivalent of a four-year college degree would suffice as a minimum licensing requirement and by suggesting that the four-year degree must be in a field relevant to the licensed vocation. Id. at 88. Other similar problems have been caused by Pierce's failure to consider a number of special situations that can arise in professional malpractice actions. We have accepted jurisdiction to clarify the definition set forth in Pierce.
Our intent in Pierce was to establish a bright-line test based on the minimum four-year-degree criterion, to the extent this is possible. Unfortunately, the suggestion that the equivalent of a four-year degree would suffice did not serve this end; and we now recede from this language.[2] Too much imprecision and variation is created by allowing courts to second-guess what does or does not constitute the equivalent of a college degree.
Accordingly, in harmony with the central thrust of Pierce, we hold that a "profession" is any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida. There can be no equivalency exception. There also is no requirement that the four-year degree itself be in a field of study specifically related to the vocation in question, and we recede from Pierce to the extent it suggested the contrary.[3] As a corollary, a vocation is a profession if any graduate degree is required as a condition of state licensure, without regard to the nature of the undergraduate education.
In addition, the only relevant criteria for determining if a vocation is a profession are those applicable to first-time applicants who have never been licensed in another state or nation to practice the particular vocation in question. The fact that persons can be licensed in Florida because they hold a similar license in another state or nation is irrelevant, no matter what educational requirements the other state or nation imposes. We do not believe that the *1276 definition of "profession" and "professional" should hinge on the licensing provisions of jurisdictions outside Florida, even if Florida recognizes some form of reciprocal licensing.
Moreover, the fact that some members of the vocation may have been admitted at a time when college degrees were not needed has no bearing, nor are the persons previously so admitted considered nonprofessionals.[4] A profession comes into being for present purposes on the date the appropriate licensing body requires a four-year college degree or a graduate degree of all future admittees; and a profession ceases to exist on the date that any future admittees no longer need hold either a four-year undergraduate degree or a graduate degree.[5]
In the same vein, a vocation is not a profession if there is any alternative method of admission that omits a required four-year undergraduate degree or a graduate degree. Likewise, a vocation is not a profession if a state license is not required at all. Nor are persons rendered "professionals" merely because they hold a four-year college degree if they are not absolutely required to hold the degree as a condition of licensing. Moreover, persons involved in more than one vocation fall under the professional malpractice statute only for acts performed while engaged in those vocations that actually qualify as professions. Similarly, the statute only applies if the alleged tortious conduct arose from the practice of a vocation that qualified as a "profession" at the moment in time when that conduct caused a completed injury or loss under recognized tort-law principles.
We acknowledge that Florida statutes recognize types of vocations similar to one another in name or purpose but with differing licensing requirements. In some cases, the differing requirements may merely reflect fields of specialization; but in others the question is not so easily resolved. There thus may be some confusion as to whether only one, or more than one, "profession" has been created.[6]
Where there is any confusion, the question of separateness turns on the intent underlying the licensing statutes, regulations, or rules. In the absence of any express intent, the fact that a four-year undergraduate degree or graduate degree is required of one group, but not another, necessarily suggests that skills of a completely different order are required and that the former group is not merely a specialty within the latter group.[7] To the extent the trial court finds this to be true, a presumption arises that the group requiring the four-year undergraduate degree or *1277 graduate degree is a separate profession.[8]
We limit the definition of "professional" set forth above to the context of the professional malpractice statute. It is not our intent that this definition be applied to any other reference to "professionals" or "professions" elsewhere in the Florida statutes, regulations, or rules, or in court cases that deal with issues other than the statute of limitations at issue here. We recognize that there may be occasions when courts, legislators, rulemaking authorities, and others may use the terms "profession" and "professional" more broadly or more narrowly than we do here today.[9]
Because it is clear that at the times in question some land surveyors could be admitted to practice their occupation without at least a four-year college degree, see § 472.013(2)(e), Fla. Stat. (1989), we conclude that Frier was not a "professional" for purposes of the relevant statute of limitations at the times in question.[10] Accordingly, we answer the certified question in the negative. The opinion under review is quashed and this cause is remanded to the trial court for further proceedings consistent with the views expressed above.
It is so ordered.
OVERTON, McDONALD, SHAW, GRIMES and HARDING, JJ., concur.
BARKETT, C.J., concurs specially with an opinion, in which KOGAN, J., concurs.
KOGAN, J., concurs in result only with an opinion.
BARKETT, Chief Justice, specially concurring.
I concur with the Court's conclusion, but I am now persuaded that the statute in question is unconstitutional on its face.
KOGAN, J., concurs.
KOGAN, Justice, concurring in result only.
Since Pierce was issued, I have come to the conclusion that the Court erred in attempting to remedy an obvious, blatant, and deliberate omission made by the legislature. If the legislature refuses to define the term "professional," then the legislature is doing nothing more than creating needless confusion, fostering litigation, and clogging the courts with pointless lawsuits. Moreover, I have come to believe that we violate the doctrine of separation of powers, art. II, § 3, Fla. Const., by taking such actions.
The majority opinion today illustrates my point. For page after page, the majority inscribes into the statute books paragraphs of material never reviewed or considered by the legislature. Those in the legislature and in the public who complain about judicial legislation would do well to consider the implications of what is happening today. By abdicating its own authority, the *1278 legislature has added new power to this Court  and the legislature has taken this action with full knowledge of what was happening. Legislative power implies a duty to act responsibly, even on potentially unpopular matters. Abdication of that duty is also an abdication of power. The legislature would do well to reclaim the authority it abandoned here.
I now am convinced that the professional malpractice statute of limitations is so vague as to be void under basic principles of due process. Art. I, § 9, Fla. Const. The shortcomings of our effort in Pierce demonstrate that a court, based on the peculiar facts before it, is not well equipped to develop rules applicable to unforeseeable cases. The extremely detailed definition adopted by the majority no doubt corrects some of these deficiencies, but I fear there may be many other problems we cannot anticipate based on the narrow record before us. Accordingly, I would declare the statute unconstitutional and unenforceable on its face.
NOTES
[1] The statute provides:

An action for professional malpractice, other than medical malpractice, whether founded on contract or tort provided that the period of limitations shall run from the time the cause of action is discovered or should have been discovered with the exercise of due diligence. However, the limitation of actions herein for professional malpractice shall be limited to persons in privity with the professional.
§ 95.11(4)(a), Fla. Stat. (emphasis added).
[2] We also recede from the remainder of Pierce v. AALL Insurance, Inc., 531 So.2d 84, 84-88 & 87 n. 2 (Fla. 1988), and from Panther Air Boat Corp. v. MacMillan-Buchanan & Kelly Insurance Agency, Inc., 531 So.2d 333 (Fla. 1988), solely to the extent they conflict with our views here.
[3] Of course, licensees still must comply with all pertinent licensing requirements.
[4] Policy dictates that such persons be grandfathered in. We do not believe it fair or tenable that some members of an occupation be considered professionals while others are not. Either every member is or none are under the rule of Pierce.
[5] In the opinion below, the district court relied in part on its earlier holding in Pensacola Executive House Condominium Association v. Baskerville-Donovan Engineers, Inc., 566 So.2d 850, 851 (Fla. 1st DCA 1990), approved, 581 So.2d 1301 (Fla. 1991), that engineers are professionals under the professional malpractice statute. The district court noted that the alternative licensing requirement for engineers "is similar to the alternative licensing requirements for the profession of land surveying." Garden, 580 So.2d at 874-75. Actually, there is a crucial distinction. The alternative for engineers does in fact omit a required four-year degree, but by its own terms it applies only to certain engineers who made appropriate applications to the state on or before July 1, 1984. § 471.013(1)(a)3., Fla. Stat. (1991). Thus, all future admittees must hold a four-year degree, and all engineers accordingly are professionals for purposes of the statute of limitations. Land surveyors with sufficient qualifying experience, on the other hand, can be licensed without a four-year degree. § 472.012(2)(e), Fla. Stat. (1991). Accordingly, some future admittees could be licensed without a four-year degree, and land surveyors thus are not professionals for purposes of the statute of limitations.
[6] Nurses, for example, fall into several different categories.
[7] This would not be true, however, if the four-year degree is merely one of two or more alternative methods of being licensed. A group only can be a separate profession for present purposes if it has a discrete membership and all future admittees to that group must hold at least a four-year college degree or graduate degree.
[8] Of course, there may be other ways of determining legislative intent in addition to the method noted here.
[9] We do not deem it possible to develop a comprehensive list of professions ourselves. The present record is completely inadequate to this end, and we are not confident that our independent research of statutes, regulations, and rules would disclose the full scope of the licensing requirements applicable to each licensed vocation. Some licensing authorities, for example, merely incorporate by reference professional standards developed by agencies or organizations that are not even part of Florida government. Ascertaining the nature of all such requirements would require fact finding that this Court cannot properly perform. Moreover, ongoing changes to existing licensing requirements may result in the creation or elimination of professions as time passes.
[10] We disapprove Cristich v. Allen Engineering, Inc., 458 So.2d 76 (Fla. 5th DCA 1984), to the extent it conflicts with the present opinion. We disapprove First State Savings Bank v. Albright & Associates of Ocala, Inc., 561 So.2d 1326 (Fla. 5th DCA 1990), and Security First Federal Savings & Loan Association v. Broom, Cantrell, Moody & Johnson, 560 So.2d 304 (Fla. 1st DCA 1990), solely to the extent they relied upon the portions of Pierce nullified by this opinion; but the results reached in these two opinions are correct based on the courts' findings that the vocation involved (real estate appraisal) did not absolutely require at least a four-year college degree of future admittees. We approve Toledo Park Homes v. Grant, 447 So.2d 343 (Fla. 4th DCA 1984), to the extent it reached a result consistent with our views here.