[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10571

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 8, 2012
JOHN LEY
CLERK

D.C. Docket No. 6:09-cv-01411-GAP-DAB

INSURANCE COMPANY OF THE WEST,
a California corporation,

Plaintiff-Appellant,

versus

ISLAND DREAM HOMES, INC.,
a Florida corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 8, 2012)

Before TJOFLAT, MARCUS, and SILER,* Circuit Judges.

_____

*Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

SILER, Circuit Judge:

Insurance Company of the West ("ICW") appeals the district court's judgment as a matter of law in favor of Island Dream Homes ("IDH"). Hawaiian Inn Beach Resort ("Hawaiian"), a Florida condominium, contracted with IDH for roof repair. While IDH was conducting the repairs, a large stone veneer wall fell, causing damage to the condominium. Hawaiian's insurer, ICW, sued IDH for negligence. IDH alleges the wall fell because it was structurally unsound. During trial, at the close of ICW's case, the district court granted IDH's motion for judgment as a matter of law, holding that no reasonable jury could find that IDH was negligent because ICW failed to present any evidence on the standard of care in the roofing industry. For the reasons stated below, we affirm.

I.

In 2007, Hawaiian's roof began to leak on the south side of the reception area. This area contained an elevator shaft that was covered in a large stone veneer. Hawaiian contacted IDH to fix the leak. Rick Tauscher, the general manager of IDH, believed the water was coming in from behind the stone veneer so he advised Hawaiian that fixing the roof would require installation of proper "flashing."

2

The purpose of flashing is to redirect water off the roof into a gutter or onto the ground. To properly flash a roof, it is necessary to reach the structural wall. Tauscher and Bret Jones, an IDH roofer, testified that roofing guidelines and the Florida Building Code required that the exterior veneer be cut all the way through in order to reach the foundational wall. There was no evidence presented to the contrary, and ICW does not allege that the work being performed (the flashing) was not in a roofer's purview. The roofers conducted a visual inspection of the veneer and surrounding walls and testified later that nothing appeared out of the ordinary.

Although IDH submitted a proposal for the job to Hawaiian that called for flashing, the proposal did not specifically state that this would involve cutting the stone veneer, and IDH admits it did not notify Hawaiian that it planned on cutting into the veneer. As the condominium was built in 1965, the veneer was several decades old and approximately four to six inches thick. One of the roofers testified that, upon cutting into the veneer, he realized it was thicker than the modern stone veneers he was familiar with, which are about two inches thick. Prior to beginning work, the roofers did not test the thickness of the veneer, perform tests on the structural integrity of the wall, review the building's original plans, or consult with an engineer. ICW's position is that IDH was negligent in failing to take these steps

3

and in failing to inform Hawaiian about its plans to cut into the veneer. ICW did not, however, present any evidence that these steps are customary or standard in the roofing industry.

Upon cutting into the veneer, it became apparent that the veneer was thicker than normal, but Tauscher did not believe this thicker veneer would cause a problem. When the roofers continued to cut into the veneer, the veneer collapsed. The collapse caused $231,467.41 in damage to the property, and ICW paid Hawaiian this amount. As the subrogee, ICW filed suit against IDH, alleging one count of negligence. IDH raised a number of affirmative defenses, including an allegation that faulty construction of the wall, and not the cut to the veneer, caused the collapse.

The case went to trial in 2011. At the close of ICW's case, IDH moved for judgment as a matter of law, and the district court granted the motion, holding that ICW failed to present evidence that IDH breached the standard of care "that a roofer would exercise under the circumstances."

The district court explained:

There's nothing more here than a pure inference from the fact that the roofer was up there doing its work and, in the process, the veneer wall collapsed. . . . The standard for negligence . . . is the exercise of reasonable care, that is, that degree of care that a reasonably careful person would use under like circumstances. "Under like circumstances" brings into play what a roofer would do. What is the custom in the

4

trade? What is the ordinary standard of care for a roofer under these circumstances? There's absolutely no evidence, none, to suggest that this defendant acted in a manner inconsistent with what a reasonable roofer would do under like circumstances.

## II.

We review a district court's granting of a motion for judgment as a matter of law *de novo* and consider the evidence in the light most favorable to the nonmoving party. *Circa Ltd. v. City of Miami*, 79 F.3d 1057, 1063 (11th Cir. 1996). Judgment as a matter of law is appropriate where no legally sufficient evidentiary basis exists for a jury to return a verdict in favor of the party on that issue. Fed. R. Civ. P. 50(a); *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004).

## III.

ICW contends the district court erred by applying a "professional" standard of care in this case. Specifically, it argues that roofers are not "professionals" under Florida law, and, thus, the roofing company should be held only to the standard of an ordinary person, rather than to the standard of a professional. ICW argues that the jury should have been able to determine if the roofers acted as a reasonably prudent person would have acted under similar circumstances. The problem with this argument is that the roofers were not ordinary people who happened to be working on a roof. They were trained roofers, and therefore, the question is what a reasonably

5

prudent *roofer* would do under similar circumstances. Without reaching the issue of whether roofers are "professionals" under Florida law, we hold that ICW was required to put forth some evidence of the standard of care in the roofing industry in order to meet its burden.

## A.

In *Moransais v. Heathman*, 744 So.2d 973 (Fla. 1999), homeowners sued engineers for failing to detect certain defects when inspecting their home. The Florida Supreme Court noted, "[W]here the negligent party is a professional, the law imposes a duty to perform the requested services in accordance with the standard of care used by similar professionals in the community under similar circumstances. . . . That Florida recognizes an action for professional malpractice is . . . evidenced by the statutory scheme for limitations of actions." *Id.* at 975-76. This "statutory scheme for limitations of actions" is Florida Statute § 95.11, which states that an action for professional malpractice must be brought within two years. The Florida Supreme Court has previously held that a profession within the meaning of § 95.11 is "any vocation requiring at a minimum a four-year college degree before licensing is possible in Florida." *Garden v. Frier*, 602 So.2d 1273, 1275 (Fla. 1992).

6

ICW interprets *Moransais* to stand for the proposition that only persons engaging in vocations that require a four-year college degree may be held to a "standard of care used by similar professionals in the community under similar circumstances." *Moransais*, 744 So.2d at 975-76. The Florida Supreme Court has, however, expressly limited this college-degree definition of "professional" to application of Florida Statute § 95.11, a statute of limitations not at issue in this case:

> We limit the definition of "professional" set forth above to the context of the professional malpractice statute. It is not our intent that this definition be applied to any other reference to "professionals" or "professions" elsewhere in the Florida statutes, regulations, or rules, or in court cases that deal with issues other than the statute of limitations at issue here. We recognize that there may be occasions when courts . . . may use the terms "profession" and "professional" more broadly or more narrowly than we do here today.

*Garden*, 602 So.2d at 1277.

Thus, it seems that the professional standard of care discussed in *Moransais* (*i.e.*, the "standard of care used by similar professionals in the community under similar circumstances") is not limited to cases brought against individuals whose vocations require a four-year college degree. *See Merrett v. Liberty Mut. Ins. Co.*, No. 3:10-cv-1195, 2012 WL 37231, at *5 (M.D. Fla. 2012)*; see also Rocks v. McLaughlin Engineering Co.*, 49 So.3d 823 (Fla. 4th Dist. Ct. App. 2010) (holding that the *Garden* definition of "professional" does not apply to the economic loss rule).

7

Regardless of whether roofers are considered "professionals" in Florida, however, ICW was required to present evidence on the standard of care in the roofing industry– either by expert testimony or by presenting testimony of roofing custom. Expert testimony is required to define the standard of care when the subject matter is beyond the understanding of the average juror. *AMH Appraisal Consultants, Inc. v. Argov Gavish P'ship*, 919 So.2d 580, 581-82 (Fla. 4th Dist. Ct. App. 2006) (holding that the standard of care for a property appraiser was "too esoteric to be understood by the average layperson").

The fact that the veneer fell while the roofers were working on it is not enough to establish negligence on its own. "Outside the relatively rare circumstances implicating the principle of *res ipsa loquitor*, it is well-settled that the mere occurrence of a mishap does not prove that the mishap resulted from tortious conduct." *Clark v. Polk County*, 753 So.2d 138, 143 (Fla. 2d Dist. Ct. App. 2000). The doctrine of *res ipsa loquitor* was not argued by ICW at the district court level, and neither party has raised it on appeal. ICW contends the jury could find that IDH was negligent for cutting into the stone veneer without first viewing the original building plans, testing the structural wall or the thickness of the veneer, informing Hawaiian of its specific plans to cut the veneer, or consulting with an engineer. An

average juror would not know, however, if these steps are standard practice in the roofing industry.

The parties admit there is little case law in Florida regarding the standard of care in the roofing industry, but a recent unpublished opinion from this court indicates that expert testimony is required in cases involving specialized knowledge. In *Goolsby v. Gain Technologies, Inc*., 362 F. App'x 123 (11th Cir. 2010), Goolsby sued manufacturers of plastic products for negligence, alleging negligent design and construction of a product he contracted with them to make. The district court granted summary judgment to the manufacturers, holding that the plaintiff was required (and failed) to offer any expert testimony to support his claim that the defendants' use of a certain type of steel did not meet a reasonable standard of care. *Id*. at 128, 132. We upheld the judgment, noting that the jury should not be "permitted to speculate as to the standard against which to measure the acts of the professional in determining whether he exercised a reasonable degree of care." *Id*. at 135 (citation and internal quotation marks omitted); *see Leslie v. Interlock Indus., Inc.*, 909 N.E.2d 61, *1-2 (Mass. App. Ct. 2009) (table) (holding that expert testimony was necessary to establish the standard of care in the roofing industry); *Bilt Rite of Augusta, Inc. v. Gardner*, 472 S.E.2d 709, 710 (Ga. Ct. App. 1996) (recognizing, in a case where

9

homeowner sued roofers for negligence, that plaintiffs must generally establish the standard of care by the use of expert testimony).

There may be instances when an expert is not necessary to establish the standard of care, but this is not such a case. Here, the roofers testified that they did not consult with an engineer or test the structural wall, but Jones testified that testing was not needed; that, "if the stone were installed correctly," the thickness of the veneer would not have made a difference; that they performed the project according to roofing codes; and that it was "normal procedure" not to test the condition of the wall before flashing. Tauscher testified that the veneer did not look any different than veneer he had worked on in the past and that he did not think a thicker veneer should have caused a problem; that in all of the roofing projects he has completed, he has never checked the original building plans; and that it is not his practice to consult with an engineer for this type of project.

It is true, as ICW points out, that the fact that a defendant acted in conformity with customary methods is not conclusive evidence that due care was exercised. *See Atlantic Coast Line R.R. v. Webb*, 150 So. 741, 746 (Fla. 1933); *Nesbitt v. Community Health of South Dade, Inc.*, 467 So.2d 711, 714 (Fla. 3d Dist. Ct. App. 1985). Because a custom itself may be substandard, the fact that a defendant acted according

10

to custom is just "some evidence" of due care. *Id*. ICW misinterprets this legal concept, however, as meaning it did not have to introduce *any* evidence of custom or standard practice in the roofing industry. To the contrary, ICW was required to present some kind of evidence from which a jury could conclude that the roofers' actions were contrary to custom or the relevant standard of care. Because it did not, judgment as a matter of law was appropriate.

## B.

Finally, ICW argues that the district court should not have granted judgment as a matter of law because IDH "did not cite any law or authority in support of its [motion]." Federal Rule of Civil Procedure 50(a)(2) provides that, when making a motion for judgment as a matter of law, the movant must "specify the judgment sought and the law and facts that entitle [it] to the judgment." The purpose of this rule is to provide notice to the court and the opposing party of any deficiencies in the plaintiff's case. *Rankin v. Evans*, 133 F.3d 1425, 1432-33 (11th Cir. 1998). But "where the trial court and all parties actually are aware of the grounds upon which the motion is made, strict enforcement of the specificity requirement in Rule 50(a)(2) is unnecessary to serve the purpose of the rule." *Id*. at 1433; *see Etienne v. Inter-Cnty Sec. Corp.*, 173 F.3d 1372, 1374 (11th Cir. 1999).

11

Here, IDH moved for judgment as a matter of law, stating:

There has been no evidence showing or indicating or proving that the defendant, Island Dream Homes, breached their duty to perform their work in a competent manner. . . . [T]here's evidence that Island Dream Homes was on that roof cutting into that veneer, but there has been no evidence indicating that the cut was incorrect or improper.

ICW and the district court then had the following exchange:

Court: [T]he only real evidence is they were doing work and the veneer failed as a result of the work they were doing. There's really no evidence that what they did was contrary to industry standards or ordinary care. . . .

ICW: Your Honor, the negligence comes from not doing the due diligence to make sure that what they were doing was up to those standards. What they've said is they didn't do the engineering tests. They didn't do a cut test. They disregarded those standards.

Court: What standards? You haven't put on any evidence that that is a standard.

ICW: That is correct, Your Honor; but I've put on evidence, though, that they never even bothered to get an engineer out there or to look at it.

Court: Yeah, but you don't have any evidence that an engineer is reasonably necessary, that the ordinary care in a roofing business would require that.

ICW: Your Honor, I think that's a question for the jury. . . . I think that's an inference for the jury to make. . . .

12

The record is clear that the court and both parties were aware of the basis of the motion. Therefore, the specificity requirement in Rule 50(a)(2) did not bar the granting of judgment as a matter of law.

AFFIRMED.