**SUNSET BEACH INVESTMENTS, LLC, a foreign corporation, Appellant,**

v.

**KIMLEY–HORN AND ASSOCIATES, INC., a foreign corporation, Michael E. Kiefer, Jr., G. Mark Brockway and Kevin M. Schanen, Appellees.**

No. 4D15–4425

District Court of Appeal of Florida, Fourth District.

January 4, 2017

Benjamin A. Webster, Evan H. Frederick, and Aaron C. Garnett, West Palm Beach, for appellant.

Jon D. Derrevere and Shirley Jean McEachern of Derrevere Hawkes Black & Cozad, West Palm Beach for appellee Michael E. Kiefer, Jr.

Kuntz, J.

The plaintiff, Sunset Beach Investments, LLC, appeals the circuit court's final order of summary judgment in favor of one of the defendants, Michael E. Kiefer, Jr. Sunset Beach argues the court erred in two respects: (1) by concluding that Kiefer, an "Engineer Intern," could not be liable for professional negligence; and (2) by applying the economic loss rule.

We conclude the court correctly decided that Kiefer could not be liable for professional negligence, the lone count asserted against him. In light of our conclusion as to the first argument, we do not address the second argument.

### Background

Sunset Beach sought to develop a beachfront parcel on Hutchinson Island and hired Kimley–Horn and Associates, Inc. to "provide professional design and permitting consulting services." Sunset Beach alleged that Kimley–Horn agreed to advise it as to the "development potential" of the property and "prepare a conceptual site plan consistent with all applicable permitting and land use requirements."

Kiefer was the "project manager" and worked on the Kimley–Horn team with, among other people, two licensed engineers who were also defendants below. The record testimony indicates that Kiefer's "project manager" role did not imply that he was the "boss" on the project. Instead, he coordinated the team but did not manage the licensed engineers' work product.

In actuality, it was the licensed engineers' obligation to oversee Kiefer. It is undisputed that Kiefer was not a licensed engineer. Instead, Kiefer passed the Fundamentals of Engineering exam and was certified by the State of Florida as an "engineer intern." Kiefer testified that engineer interns do not practice engineering and that they are required to work under a licensed engineer's supervision.

As a result of delays and other issues with the project, Sunset Beach filed a complaint against Kimley–Horn. Later, Sunset Beach filed an amended complaint against Kimley–Horn, Kiefer, and the two licensed engineers. The sole count against Kiefer was a professional negligence claim asserted against all four defendants.

While Sunset Beach alleged that Kiefer was responsible for various facets of the project, if not the entire project, the record evidence at the time of summary judgment was clear that Kiefer was not a licensed engineer and could not sign and seal the relevant plans. That evidence is consistent with the allegation in the amended complaint that "Sunset Beach relied upon the expertise of Brockway and Schanen, as licensed Professional Engineers, to prepare site plans and other design documents suitable to obtain the necessary permits within a reasonable period of time."

Kiefer moved for summary judgment on his affirmative defense that the complaint failed to state a cause of action for professional negligence against him. Kiefer argued that he was immune from suit for professional negligence because he was not a licensed professional and was merely an employee of Kimley–Horn. In his affidavit in support of his summary judgment motion, Kiefer stated that he had never been a professional engineer licensed in any

state, is not subject to regulation by the state, and did not sign or seal any engineering plans or other documents.

The circuit court held a hearing on the motion for summary judgment and entered an order finding that Kiefer could not be subject to a claim for professional negligence. In the written order, the court stated "the undisputed record evidence establishes that at all times material Kiefer was not a licensed engineer .... [that] Kiefer was not a 'design professional' .... [and] that Kiefer was not a 'licensed professional' at any time material to the matters asserted by Sunset Beach." Further, the court concluded "the undisputed record evidence further establishes that Kiefer did not sign or seal any plans and did not use any professional designation in connection with the Sunset Beach project."

This appeal followed.

### Analysis

With regard to claims for professional negligence, the Florida Supreme Court has explained that "where the negligent party is a professional, the law imposes a duty to perform the requested services in accordance with the standard of care used by similar professionals in the community under similar circumstances." *Moransais v. Heathman*, 744 So.2d 973, 975–76 (Fla. 1999). The issue in this appeal turns on the definition of "professional" and, specifically, whether an engineer intern is a "professional" for purposes of a professional negligence claim.

██ We conclude that a licensed engineer could be subject to a claim for professional negligence, as engineering is a profession which requires special education, training, skill. But Kiefer did not satisfy the requirements to be a licensed engineer. Instead, he was an engineer intern, which the legislature classifies differently from a licensed engineer.

Notwithstanding that difference, Sunset Beach asserts that *Garden v. Frier*, 602 So.2d 1273 (Fla. 1992), and *Rocks v. McLaughlin Engineering Co.*, 49 So.3d 823 (Fla. 4th DCA 2010), compel us to conclude that an engineer intern may be subject to a professional negligence claim. We disagree; those cases do not support Sunset Beach's position.

In *Garden*, the Florida Supreme Court considered whether the acts of *licensed* surveyors fell under the two-year statute of limitations for professional malpractice or the four-year statute of limitations for negligence. The court answered the question by providing a two-part test. First, the court stated that a vocation is not a profession if it does not require "at a minimum a four-year college degree before licensing is possible in Florida. There can be no equivalency exception." 602 So.2d at 1275. Second, the court stated that "a vocation is not a profession if a state license is not required." *Id.* at 1276.

However, in *Garden*, the supreme court "limit[ed] the definition of 'professional' ... to the context of the professional malpractice statute." *Id.* at 1277. The court reasoned that it was not in a position to address all professions nor future changes in the licensing requirements for those professions. *Id.* at 1277 n.9.

More recently, we discussed *Garden* in *Rocks v. McLaughlin Engineering Co.*, 49 So.3d 823 (Fla. 4th DCA 2010). In *Rocks*, the plaintiff sued a company and two of its *licensed* surveyors for, among other claims, professional malpractice. *Id.* at 824–25. The plaintiff "specifically alleged that defendants were licensed surveyors under section 471.023, Florida Statutes; that all owed a duty as licensed surveyors to perform their engagement with the same level of skill and accuracy as any professional so licensed under the statute; and that they had deviated from that duty

and caused damages." *Id.* After the circuit court dismissed the complaint, we rejected the surveyors' argument that they were not professionals simply because they lacked a four-year college degree. *Id.* at 827.

In rejecting the surveyors' argument, we stated that "we take the supreme court at its word. *Garden* limited the non-professional designation for surveyors to only the statute of limitations." *Id.* Notably, we also looked to the Legislature's designation of surveyors as professionals. *See id.* ("Moreover, although the surveyor regulatory and licensure statutes did not then require a four-year college degree, we note that long before the 2005 amendment adding the college degree requirement, the *Legislature* had used the term *professional* to apply to the regulation and licensure of surveyors.... [T]he Legislature deemed surveyors as *professionals* many years before it added the college degree requirement."). Finally, we concluded that "common law authority is in the same vein" as the Legislature's classification. *Id.* at 827.

The surveyors in *Rocks* satisfied the state's requirements to be "professional" surveyors and, for that, the state licensed them. Therefore, a professional negligence claim against the *licensed* surveyors was the plaintiff's potential remedy to address allegations that the surveyors failed to perform in a manner expected of someone with the requisite "special education, training, experience and skill" to be a licensed surveyor. *Id.* at 828.

We did not hold in *Rocks* that a license is unnecessary for a professional negligence claim to exist. That issue was not presented because the surveyors in *Rocks* were licensed. Here, however, Sunset Beach argues that Kiefer is a "professional" under *Rocks* because Kiefer's service "is one requiring special education, training, experience and skill."

We conclude that argument lacks merit. Sunset Beach's test would require courts to decide what qualifies as "special education," what qualifies as "training," what is acceptable "experience," and related issues. That test would lead to the same confusion which the supreme court attempted to remedy in *Garden*. *See Garden*, 602 So.2d at 1274–75 ("In light of the confusion that has arisen since *Pierce* ....."; "[I]n *Pierce* we created confusion by suggesting that the equivalent of a four-year college degree would suffice as a minimum licensing requirement and by suggesting that the four-year degree must be in a field relevant to the licensed vocation."). The supreme court explained that too "much imprecision and variation is created by allowing courts to second-guess what does or does not constitute the equivalent of a college degree." *Id.* at 1275. If too much imprecision and variation resulted when the test hinged solely on education, it would surely exist if the test required a balancing of education, training, experience, and skill.

■ At a minimum, in a profession where a license exists, the existence of a license is a valid barometer for determining whether a person is classified as a professional. *See id.* at 1276 ("[A] vocation is not a profession if a state license is not required at all."); *Bixenmann v. Dickinson Land Surveyors, Inc.*, 294 Neb. 407, 882 N.W.2d 910, 914 (2016) ("[T]he requirement of a license to practice one's occupation, although not dispositive, 'strongly indicates that an occupation is a profession.' However, the requirement of a license alone does not make an occupation a profession, as the preparation and training required to procure that license are also important factors.").

In fact, Sunset Beach was unable to provide any case where an unlicensed person was held liable for professional negli-

gence. Each of the cases which Sunset Beach cites involved a licensed professional. *See Rocks*, 49 So.3d at 823 (licensed surveyors); *Moransais*, 744 So.2d at 973 (licensed engineer); *Cristich v. Allen Eng'g*, 458 So.2d 76 (Fla. 5th DCA 1984) (licensed surveyor); *Merrett v. Liberty Mut. Ins. Co.*, No. 3:10–CV–1195–J–12MCR, 2012 WL 37231 (M.D. Fla. Jan. 6, 2012) (licensed insurance adjustor). Although Sunset Beach also cites *Insurance Co. of the West v. Island Dream Homes, Inc.*, 679 F.3d 1295 (11th Cir. 2012), which involved an unlicensed roofer, the Eleventh Circuit issued its opinion "without reaching the issue of whether roofers are 'professionals' under Florida law." *Id.* at 1298.

█ When a license exists, the Legislature has decided which requirements must be satisfied for a person to work in that profession. And, until those requirements are satisfied, the person is not permitted to act as a professional in the subject field. That presumption is even more appropriate when the Legislature has chosen to specifically define who is a professional in the subject field such as with engineers. Unlike licensed surveyors and licensed engineers, the Legislature does not classify an unlicensed engineer intern as a professional. For that reason, unlike a licensed engineer, who is required to renew the engineering license every two years, no requirements exist to maintain the engineer intern designation. § 471.017, Fla. Stat. An engineer intern is neither licensed nor regulated.

Nor did the Legislature include "engineer intern" within the definition of "engineer." The Legislature defined "engineer intern" to "mean a person who has graduated from an engineering curriculum approved by the board and has passed the fundamentals of engineering examination ...." § 471.005(6), Fla. Stat. (2013). That is contrasted with the Legislature's defini-tion for engineer which "includes the terms 'professional engineer' and 'licensed engineer' and means a person who is licensed to engage in the practice of engineering under this chapter." § 471.005(5), Fla. Stat. (2013).

These statutory definitions clearly indicate that being an "engineer intern" does not make a person an engineer. In fact, being an engineer intern and working under the supervision of a licensed engineer is a requirement to ultimately obtaining an engineering license. The Third District explained that "in order to practice engineering in Florida, a person is required to pass two examinations: (1) the fundamentals examination and (2) the principles and practice examination." *Rizov v. State, Bd. of Prof'l Eng'rs*, 979 So.2d 979, 980 (Fla. 3d DCA 2008) (citing § 471.015(1), Fla. Stat. (2005)). Upon the passage of the fundamentals examination, the first examination listed, the person is qualified "to practice in the state as an engineer intern." *Id.* (citing § 471.013(1)(b), Fla. Stat. (2005)). An engineer intern must then have "four years of 'active engineering experience of a character indicating competence to be in responsible charge of engineering'" prior to sitting for the second examination. *Id.* (citing § 471.013(1)(a)1., Fla. Stat.).

█ The statute both anticipates and requires engineer interns to engage in engineering before becoming licensed. Providing services which meet the statutory definition of "engineering" under the supervision of a licensed engineer does not make an engineer intern a *de facto* licensed engineer—rather, it is a step to becoming a licensed engineer. Kiefer did not satisfy the requirements to become a licensed engineer and, for that reason, Kiefer was not permitted to sign or seal plans and was required to work under a licensed engineer's supervision. Thus, Keifer, an engineer intern, was not a profes-

sional and was not subject to liability for professional negligence.

Sunset Beach argues that our conclusion described above will leave it without a remedy. We disagree. Sunset Beach may have a remedy for any professional negligence found to exist against Kimley–Horn and the two licensed engineers. Sunset Beach chose not to seek any other remedies against Kiefer.

### Conclusion

We affirm the trial court's final order of summary judgment in Kiefer's favor. Kiefer was an unlicensed engineer intern and could not be liable for a professional negligence claim.

*Affirmed.*

Ciklin, C.J., and May, J., concur.